**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **ISMAEL ZARCO SANCHEZ,** | ) |
| **GABRIEL ARGUELLES,** | ) |
| **HECTOR AQUINO,** | ) |
| **GLORIA CASTANEDA,** | ) |
| **ORLIN WILIFREDO TURCIOS CASTRO,** | ) |
| **CARMEN DE LA CRUZ,** | ) |
| **ELIZABETH ESCOTO,** | ) Civil Action No 4:24-cv-939 |
| **REYNA GUIFFARO,** | ) |
| **MARCO ANTONIO LEMUS,** | ) JURY TRIAL DEMANDED |
| **DULCE OCHOA,** | ) |
| **GABRIEL OCHOA,** | ) |
| **JUAN PUAC,** | ) |
| **MARIA SARAVIA,** | ) |
| **LUIS SERRANO,** | ) |
| **JULIO TAFFINDER,** | ) |
| **CLAUDIA VELAZQUEZ, and** | ) |
| **ROBERTO ZAVALA,** | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "SEC" or "Commission") alleges:

## NATURE OF THE ACTION

1.      Between May 2020 and September 2022, CryptoFX, LLC ("CryptoFX") conducted a Ponzi scheme targeting Latino investors in which it raised more than $300 million – predominantly in cash – from more than 40,000 investors.  CryptoFX sold investment contracts in which it promised to trade investor funds in the crypto-asset and foreign-exchange markets.  However, CryptoFX used substantially all investor money to make Ponzi payments, pay

commissions to salespeople in a multi-level marketing scheme, and for personal purchases by CryptoFX executives and others, including some Defendants.

2.      Until September 2022, CryptoFX was headquartered in Houston, Texas and controlled by Mauricio Chavez and Giorgio Benvenuto.  On September 19, 2022, the SEC filed a complaint against CryptoFX, Chavez, and Benvenuto in this Court, alleging that they had been operating a Ponzi scheme in violation of the antifraud and securities-registration provisions of the federal securities laws.  *SEC v. Mauricio Chavez*, *et al*., No. 4:22-cv-03359 (S.D. Tex.).  The Court granted the SEC's emergency motion for a temporary restraining order (and later a preliminary injunction) and asset freeze.  On September 29, 2022, at the SEC's request, the Court placed CryptoFX into receivership and appointed a receiver (the "Receiver") over CryptoFX and the assets of Chavez and Benvenuto.

3.      Defendants were salespeople in the CryptoFX organization (identified by CryptoFX and this Complaint as "Leaders") who each offered and sold CryptoFX's investment contracts to, collectively, thousands of investors from Leaders' locations across the United States, including Houston, Chicago, New Orleans, and Los Angeles.  As Leaders, all Defendants engaged in unregistered offers and sales of CryptoFX investments and acted as unregistered brokers, earning commissions for CryptoFX investments they sold, as well as commissions and sometimes bonuses from the sales of investments sold by other salespeople in their downline.  Defendants promised investors that they would make returns ranging from 15% to 100% generated by CryptoFX's crypto- and foreign-exchange-trading program.  Instead of placing investor funds into a trading program, though, CryptoFX and several Defendants used investor funds to pay returns to existing investors, pay commissions to Defendants and other salespeople, and toward other purposes, including personal purchases.

4.      Defendants Gloria Castaneda, Dulce Ochoa, Gabriel Ochoa, Ismael Zarco Sanchez, Maria Saravia, and Roberto Zavala (collectively, the "Fraud Defendants") defrauded CryptoFX investors by misappropriating investor funds, knowingly soliciting investors to invest in fraudulent investments, and/or making Ponzi payments.  Further, after the SEC sued, and the Receiver took control of, CryptoFX, Gabriel Ochoa told at least two investors that he would help them get their CryptoFX investment money back *if* they retracted the information they provided to the SEC.

5.      Through their actions, all Defendants violated the securities-registration provisions of Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c)] and the broker-registration provisions of Section 15(a) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78o].  Additionally, the Fraud Defendants violated the antifraud provisions of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5] and 17(a) of the Securities Act [15 U.S.C. § 77q(a)].  Gabriel Ochoa also violated Exchange Act Rule 21F-17 [17 C.F.R. § 240.21F-17] by trying to cause investors to provide false information to the SEC and impede them from communicating with the SEC staff about possible securities-law violations.

6.      The SEC brings this action against Defendants seeking: (i) permanent injunctive relief; (ii) disgorgement of ill-gotten gains, plus prejudgment interest; and (iii) civil penalties.

## **DEFENDANTS**

7.      **Ismael Zarco Sanchez** is 40 years old and resides in Conroe, Texas.

8.      **Gabriel Arguelles** is 34 years old and resides in Chicago, Illinois.

9.      **Hector Aquino** is 47 years old and resides in Santa Monica, California.

10.     **Gloria Castaneda** is 54 years old and resides in Berwyn, Illinois.

11.     **Orlin Wilifredo Turcios Castro** is 59 years old and resides in Spring, Texas.

12.     **Carmen De la Cruz** is 48 years old and resides in Tomball, Texas.

13.     **Elizabeth Escoto** is 51 years old and resides in Kenner, Louisiana.

14.     **Reyna Guiffaro** is 60 years old and resides in Kenner, Louisiana.

15.     **Marco Antonio Lemus** is 53 years old and resides in Houston, Texas.

16.     **Dulce Ochoa** is 40 years old and resides in Edinburg, Texas.  She is married to Gabriel Ochoa.

17.     **Gabriel Ochoa** is 45 years old and resides in Edinburg, Texas.  He is married to Dulce Ochoa.

18.     **Juan Puac** is 37 years old and resides in Port Saint Lucie, Florida.

19.     **Maria Saravia** is 60 years old and resides in Houston, Texas.

20.     **Luis Serrano** is 50 years old and resides in Saint Rose, Louisiana.

21.     **Julio Taffinder** is 28 years old and resides in Cypress, Texas.

22.     **Claudia Velazquez** is 44 years old and resides in Santa Monica, California.

23.     **Roberto Zavala** is 55 years old and resides in Cerritos, California.

<u>**RELATED ENTITY AND INDIVIDUALS**</u>

24.     **CryptoFX, LLC** was a Texas limited liability company with its principal place of business in Houston, Texas.  CryptoFX purported to engage in trading in the crypto-asset and foreign-exchange markets for its investors, and it was never registered with the Commission.  On September 19, 2022, the Commission sued CryptoFX, charging the company with antifraud and securities-registration violations, resulting in the appointment of the Receiver.  *SEC v. Mauricio Chavez*, *et al*., No. 4:22-cv-03359 (S.D. Tex. Sept. 19, 2022).

25.     **Mauricio Chavez** is 42 years old and resides in Houston, Texas.  He was the founder and CEO of CryptoFX.  On September 19, 2022, the Commission sued Chavez, charging

him with antifraud and securities-registration violations, as well as violations of the Investment Advisers Act of 1940 ("Advisers Act"). *SEC v. Mauricio Chavez*, *et al*., No. 4:22-cv-03359 (S.D. Tex. Sept. 19, 2022). On September 29, 2022, at the SEC's request, the Court placed Chavez's assets into receivership. On August 31, 2023, the Court entered a Judgment against Chavez, which: (a) permanently restrained and enjoined him from violating Sections 5 and 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and Sections 206(1) and 206(2) of the Advisers Act; (b) permanently restrained and enjoined him from directly or indirectly, including, but not limited to, through any entity he owns or controls, participating in the issuance, offer, purchase, or sale of any security, provided, however, that such injunctions shall not prevent Chavez from purchasing or selling securities for his own personal accounts; (c) barred him from serving as an officer or director of a public company; and (d) ordered him to pay disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil penalty, with amounts to be determined upon future SEC motion.

26. **Giorgio Benvenuto** is 56 years old and resides in Houston, Texas. He assisted Chavez in operating CryptoFX. On September 19, 2022, the Commission sued Benvenuto, charging him with antifraud and securities-registration violations. *SEC v. Mauricio Chavez*, *et al*., No. 4:22-cv-03359 (S.D. Tex. Sept. 19, 2022). On September 29, 2022, at the SEC's request, the Court placed Benvenuto's assets into receivership. On February 25, 2024, the Court entered a Judgment against Benvenuto, which: (a) permanently restrained and enjoined him from violating Section 17(a) of the Securities Act, and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder; (b) permanently restrained and enjoined him from directly or indirectly, including, but not limited to, through any entity he owns or controls, participating in the issuance, offer, purchase, or sale of any security, provided, however, that such injunctions shall not prevent Chavez from

purchasing or selling securities for his own personal accounts; (c) barred him from serving as an officer or director of a public company; and (d) ordered him to pay disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil penalty, with amounts to be determined upon future SEC motion.

## JURISDICTION AND VENUE

27.     The Commission brings this action pursuant to authority conferred upon it by Sections 20(b) and 20(d) of the Securities Act [15 U.S.C. §§ 77t(b) and 77t(d)] and Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. §§ 78u(d) and 78u(e)].

28.     This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), (e), and 78aa].

29.     The Defendants offered and sold investments in CryptoFX with purported guaranteed periodic returns, pursuant to contracts labeled Venture Agreements.  CryptoFX's offerings are securities because they fall under the description of notes and investments contracts, respectively, under Section 2(a)(1) of the Securities Act [15 U.S.C. § 77b(a)(1)] and Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c(a)(10)].

30.     In connection with the conduct described in this Complaint, Defendants, directly or indirectly, made use of the mails or the means or instruments of transportation or communication in interstate commerce by, among other means, soliciting investments via the Internet and cell-phone communications.  Multiple Defendants located outside of Texas also transported investor cash to Texas.

31.     Venue is proper in this District because, at all relevant times, CryptoFX was located in and conducted business in this District, and several of the individual Defendants resided in this

District.  Further, acts, transactions, and courses of business constituting violations of the federal securities laws alleged in this Complaint occurred within this District, including but not limited to Defendants' solicitations of investors and the acceptance and disbursement of investor funds.

## FACTUAL ALLEGATIONS

### I.    Company Background and Procedural History

32.    Founded in Houston by Chavez and others in or around February 2020, CryptoFX was a $300 million Ponzi scheme with operations in at least 10 states and two foreign countries that defrauded over 40,000 predominantly Latino investors.

33.    CryptoFX claimed that Chavez would trade investor funds in the crypto-asset and foreign-exchange markets and pay returns ranging from 15% to 100%.  In reality, almost none of the money was traded and instead was used to make Ponzi payments, to pay commissions to salespeople, and for personal purchases.

34.    On September 19, 2022, the Commission filed an emergency action to halt the ongoing fraudulent offering orchestrated by CryptoFX, Chavez, and Benvenuto, and obtained a temporary restraining order (and later a preliminary injunction), an asset freeze, and the appointment of the Receiver over CryptoFX and the assets of Chavez and Benvenuto.  In that complaint, the Commission alleged that CryptoFX had raised at least $12 million from approximately 5,000 investors.

35.    After filing the emergency action in September 2022, the Commission received over 2,000 complaints from CryptoFX investors detailing the scope and breadth of the scheme. As reported to the Court by the Receiver, CryptoFX had raised at least $300 million from over 40,000 predominantly Latino investors across the country (and in two foreign countries).  Despite raising more than $300 million (mostly in cash), Chavez's crypto-asset and foreign-exchange

market trading generated only $2.6 million in trading profits (or less than 1% of the total amount raised), and CryptoFX could only make payments of promised returns by using the funds coming in from new investors. The receivership is ongoing.

## II. Defendants Solicited CryptoFX Investors, Sold Unregistered Securities, and Acted as Unregistered Brokers

36. CryptoFX Leaders were responsible for (1) soliciting new investors, (2) managing ongoing recruitment and referrals by other investors, (3) communicating bonuses and promotions, (4) documenting new investments, (5) collecting investor funds, (6) sending some cash to CryptoFX's Houston headquarters, and (7) paying out investor returns.

37. Defendants solicited investors in multiple ways, as discussed below in Paragraphs 40-42. Several Defendants pitched prospective investors at seminars held at meeting halls, hotels, and restaurants. During these seminars, several Defendants described CryptoFX as the road to financial freedom and touted that it had created multiple millionaires. Each Defendant promoted CryptoFX and routinely used cell phones to communicate with prospective investors; several Defendants also promoted CryptoFX using Zoom chats and social media. Soliciting investors, including at various meetings held at the CryptoFX regional offices, each Defendant told prospective investors that CryptoFX would invest their money in crypto-asset and foreign-exchange markets, which would generate returns of 15% to 100% (based on Chavez's trading). Certain Defendants also told prospective investors that their investments were "risk-free" and that their principal was "guaranteed" even if there was a world war or power outage.

38. After soliciting investors, each Defendant instructed investors to execute a simple contract that identified the investment amounts, the promised returns, and the dates that the returns would be paid (the "Venture Agreements"). Although the Venture Agreements contained language claiming that "CryptoFX is not an investment company or platform," investors handed

over their funds to CryptoFX and its Leaders (including Defendants) with the expectation that CryptoFX would provide investment returns in promised amounts on a promised schedule. Defendants solicited predominantly cash investments, ranging from $500 to $300,000, and earned transaction-based compensation in the form of commissions and bonuses.

39.    CryptoFX operated on a multi-tier commission structure in which a Leader earned seven percent of the investments of all investors they personally brought in to invest in CryptoFX. At the second tier, a Leader would also earn three percent of all funds solicited by their first-tier investors.  CryptoFX also paid Leaders an extra bonus when at least three of their referrals invested a certain amount set by Chavez.

40.    Collectively, Defendants solicited investments in CryptoFX's Venture Agreements from thousands of investors, including, but not limited to, the following:

a.    On or around February 11, 2022, Ismael Sanchez pitched investor P.B. to invest $5,000 in CryptoFX.  Sanchez told P.B. that he would earn 18% returns in six months. Based on this solicitation, P.B. gave Sanchez $5,000 in cash.  Additionally, at an August 10, 2022 event, Sanchez solicited investors at a Houston, Texas banquet hall, claiming that he had made over $11 million through crypto trading.  He told the audience that CryptoFX can turn others into millionaires, too.  Records indicate that Sanchez received at least $2,097,316.50 in commissions and bonuses from sales of CryptoFX contracts and from misappropriation of investor funds.

b.    Investor P.R. attended a meeting held in Mundelein, Illinois in the summer of 2022, in which Gabriel Arguelles told P.R. and her husband that: (i) they could earn 18% returns after six months, (ii) there was "no risk" investing in CryptoFX, and (iii) their "money was guaranteed."  As a result, P.R. gave Arguelles $5,000 in cash.  Records indicate that

9

Arguelles received at least $55,843 in commissions and bonuses from sales of CryptoFX contracts.

c.    In the summer of 2022, Hector Aquino solicited investor G.M. at one of Aquino's regularly-held CryptoFX solicitation meetings in Los Angeles. During the meeting, Aquino described his success with CryptoFX and promised 15% returns. As a result, G.M. gave Aquino $5,000 in cash. Records indicate that Aquino received at least $55,169 in commissions and bonuses from sales of CryptoFX contracts.

d.    On or around May 24, 2022, Gloria Castaneda promised M.V. that she would earn 18% returns in six months by investing in CryptoFX. Consequently, M.V. took out a $20,000 loan, and gave Castaneda two separate $10,000 cash investments. Records indicate that Casteneda received at least $548,865.90 in commissions and bonuses from sales of CryptoFX contracts.

e.    Investor Z.A. met Orlin Turcios Castro in August 2022 at a CryptoFX office in Houston. Turcios Castro promised Z.A. 15% returns on his investment based on crypto-asset trading. That day, Z.A. made a $5,000 cash investment and Turcios Castro added him to a WhatsApp group chat, where he and other Leaders updated investors on CryptoFX news, including meetings and potential recruiting bonuses. Records indicate that Turcios Castro received at least $85,318 in commissions and bonuses from sales of CryptoFX contracts.

f.    In May 2022, Carmen De la Cruz solicited M.M. to invest $5,000 in CryptoFX, telling her that she would receive 15% returns every three months. De la Cruz also filled out M.M.'s Venture Agreement and accepted her $5,000 cash investment. Records indicate that De la Cruz received at least $45,073 in commissions and bonuses from sales of CryptoFX contracts.

g.  In September 2022, Elizabeth Escoto solicited investor N.R., promising N.R. 15% returns every three months on his $5,000 cash investment.  Records indicate that Escoto received at least $96,263.90 in commissions and bonuses from sales of CryptoFX contracts.

h.  In January 2022, Reyna Guiffaro solicited investor W.P., promising that W.P. would receive 15% returns payable every three months.  As a result, W.P. gave Guiffaro $9,000 in cash.  Records indicate that Guiffaro received at least $289,389.60 in commissions and bonuses from sales of CryptoFX contracts.

i.  Investor C.M. invested with CryptoFX after attending Marco Antonio Lemus's October 2022 presentation to C.M. and others in Waco.  Lemus touted himself as an example of financial self-improvement and told C.M. that she would receive 15% monthly returns from her investment in CryptoFX.  Records indicate that Lemus received at least $136,220 in commissions and bonuses from sales of CryptoFX contracts.

j.  During a summer 2022 Zoom meeting, Dulce Ochoa promised investor I.M. that she would receive 18% returns after six months by investing in CryptoFX.  Dulce Ochoa guaranteed that she would return I.M.'s entire investment principal, no matter what happened.  Based on these representations, I.M. and her two brothers invested $52,500.  Records indicate that Dulce Ochoa received at least $16,560 in commissions and bonuses from sales of CryptoFX contracts.

k.  In April 2022, Gabriel Ochoa gave a presentation to investor J.B. and other potential investors, assuring them that their capital would not be at any risk if there was a war or power outage.  Further, Gabriel Ochoa led numerous in-person presentations promising 18% returns after six months based on Chavez's trading.  Records indicate that Gabriel Ochoa

received at least $473,401.52 in commissions and bonuses from sales of CryptoFX contracts. The Ochoas operated the CryptoFX office in Waukegan, Illinois where these presentations were held.

l.   In April 2022, Juan Puac pitched investor B.R. about the CryptoFX "investing programs:" Bronze, Silver, and Gold – each with different minimum investment amounts.  After Puac told B.R. that he would receive 15% returns every three months, B.R. invested $11,000 in cash.   Records indicate that Puac received at least $164,846 in commissions and bonuses from sales of CryptoFX contracts.

m.  On or around May 4, 2022, Maria Saravia guaranteed investor P.C. that he would receive 15% returns after three months and 18% returns after another six months. Saravia also told P.C. that he could receive referral bonuses if he got other people to invest. Saravia routinely helped people fill out Venture Agreements at CryptoFX's Houston headquarters.  Records indicate that Saravia received at least $432,314 in commissions and bonuses from sales of CryptoFX contracts.

n.   At an August 2022 meeting at a coffee house in the New Orleans area, Luis Serrano told investor L.D. that she would earn 15% returns in three months on a $10,000 investment in CryptoFX.   Records indicate that Serrano received at least $33,420 in commissions and bonuses from sales of CryptoFX contracts.

o.   Julio Taffinder solicited several investors at CryptoFX's Houston headquarters, including investors R.C. in March 2022 and V.M. in or around September 2022, promising guaranteed returns of 15% every three months.  Additionally, Taffinder solicited CryptoFX investors to invest in non-fungible tokens that were never actually delivered to investors.   Records indicate that Taffinder received at least $29,000 in commissions and

12

bonuses from sales of CryptoFX contracts.

        p.  In August 2022, Claudia Velazquez pitched investments in CryptoFX to investor S.Q., telling her that she would receive 30% returns every three months for a year on a $10,000 investment.  Records indicate that Velazquez received at least $53,585 in commissions and bonuses from sales of CryptoFX contracts.

        q.  Roberto Zavala routinely solicited investors in CryptoFX, including in August 2022, when he told investor R.E. that CryptoFX provided "risk-free" profits.  Because of Zavala's pitch, R.E. invested $20,000 in cash.  Records indicate that Zavala received at least $574,189 in commissions and bonuses from sales of CryptoFX contracts.

    41.    Each of the Defendants was engaged in the business of effecting transactions in securities for the accounts of others.  Each of the Defendants solicited investments in CryptoFX repeatedly and regularly.  Each of the Defendants was personally involved in having investors execute the CryptoFX Venture Agreements, sometimes even filling out the form for the investors. Each of the Defendants also received transaction-based compensation in the form of commissions and bonuses for bringing investments into CryptoFX.

    42.    CryptoFX's offering of the investment contracts was not registered with the Commission.  Similarly, no Defendant was ever registered with the Commission as a broker or as an associated person of a firm registered with the Commission.

### III.    Six Defendants also Defrauded Investors.

    43.    In addition to acting as unregistered brokers in an unregistered securities offering, the Fraud Defendants defrauded CryptoFX investors by (1) misappropriating investor funds; (2) soliciting investors after the Court entered emergency orders to halt the ongoing and fraudulent offering; and/or (3) making Ponzi payments to investors.  Several of the Fraud Defendants also

took additional actions to conceal the fraud from investors.

### a. Sanchez misappropriated investor funds to pay for his home.

44.     In spring 2022, Sanchez personally pitched two investors, S.R. and M.L., in Chicago, Illinois to invest in CryptoFX, promising returns on their investments to be earned by CryptoFX trading in the crypto-asset and foreign-exchange markets.  Shortly thereafter, two recruiters who worked for Sanchez instructed these investors to wire their investment funds (totaling $260,000) to Chicago Title of Texas, LLC ("Chicago Title" or "Chicago Title of Texas").  When M.L. questioned why the funds needed to be wired to Chicago Title of Texas, Sanchez's recruiter responded that the funds needed to be wired to Chicago Title *of Texas* because the trading was taking place in Houston, *Texas*.

45.     A different Sanchez recruiter told S.R. that any investment over $50,000 had to be wired to Chicago Title.  In both instances, the recruiters told the investors that the wiring instructions came from Sanchez and the investment funds would be used for crypto-asset trading.  Instead, Sanchez used the investors' funds towards the purchase a $1 million home in Conroe, Texas.  When he personally solicited the investments of these two investors, Sanchez did not disclose that the funds: (a) would not be used for crypto-asset trading, and (b) would actually be used to purchase his home.

### b. Gabriel and Dulce Ochoa solicited investors after they had learned of the Commission's filing.

46.     Gabriel and Dulce Ochoa continued to solicit investors for the CryptoFX offering despite knowing – based on the Commission's September 2022 filing and the Court's subsequent emergency orders – that CryptoFX was alleged to be a fraudulent entity and had been placed into receivership with its assets frozen.

47.    In a December 2022 Facebook video, the Ochoas admitted that they learned about the SEC's lawsuit in early October, shortly after the temporary restraining order, asset freeze, and receivership were in place.  Yet, on or about October 1, 2022, the Ochoas told investors via text and WhatsApp messages that their CryptoFX office would be closed for an "adaptation program." Then, on October 15, 2022, the Ochoas announced that CryptoFX was going to enact this "adaptation program" with new contracts to be paid in Bitcoin with digital wallets.

48.    As late as October 21, 2022, the Ochoas continued to solicit investments from investors.  More than a month after the SEC filed its lawsuit against CryptoFX, the Ochoas told investors that they would double their money after six months through Chavez's crypto-asset trading, even though they knew that: (a) CryptoFX was in receivership and subject to an asset freeze and a preliminary injunction; and (b) Chavez was restrained and enjoined from engaging in such activity.  On or about October 21, 2022, Gabriel and Dulce Ochoa visited investor E.M. at her home in North Carolina.  There, the Ochoas told E.M. that CryptoFX would double her investment in six months.  As a result, E.M. signed a contract and gave the Ochoas $5,000 in cash to invest with CryptoFX.

49.    Neither Gabriel nor Dulce Ochoa ever informed E.M. that CryptoFX had been sued by the SEC more than a month earlier, was in receivership, was subject to a preliminary injunction and an asset freeze, and operated as an alleged Ponzi scheme.  A reasonable investor would have considered that information material in deciding whether to invest with CryptoFX.

### c.    Zavala, Saravia, and Castaneda knowingly made Ponzi payments to investors.

50.    Zavala, Saravia, and Castaneda personally handled incoming and outgoing cash in such a way that they knew, or were severely reckless in not knowing, that CryptoFX operated as a cash Ponzi scheme.  Both Zavala and Saravia routinely used the cash that they knew had just come

in from new investors to pay purported returns to existing investors.

51.     Until the Receiver took control of CryptoFX's Houston headquarters in September 2022, Saravia kept a personal safe in that office in which she kept the cash related to CryptoFX investment contracts for which she was responsible.  She knew that the cash she used to pay returns to existing contracts had just come in as investment principal from new investors.

52.     Operating out of a Chicago office from mid-to-late 2020 through October 2022, Zavala personally solicited and collected funds, in cash, from CryptoFX investors, promising "risk-free" returns.  From the investment principal (in cash) that he received from new investors, he personally paid commissions to Leaders, made Ponzi payments to existing CryptoFX investors, and periodically gave cash to a driver sent by Chavez for delivery back to Houston.

53.     Castaneda also made Ponzi payments.  Between January 2022 and September 2022, she received $11,647,557 in investments from investors.  Of these funds, Castaneda only sent $921,244 (less than 8%) to Houston for Chavez to purportedly "trade."  Castaneda used $8,589,227 to pay purported returns to earlier investors and paid the remainder as commissions and bonuses to herself and those in her referral group.

54.     Zavala, Saravia, and Castaneda knew, or were severely reckless in not knowing, that they were making Ponzi payments by providing purported investment "returns" using new investor funds, and not through any profits from crypto-asset or foreign-exchange trading.

### d.  Concealing the Fraud

55.     In addition, the Fraud Defendants attempted to conceal CryptoFX's fraudulent nature and to downplay the SEC's lawsuit.  Saravia told investors that the lawsuit was fake. Sanchez, Zavala, Castaneda, and the Ochoas lied about investment-return payment dates, telling

investors that their returns would be paid in full in November 2022, and then moving the date to December 2022.

56.     Further, in mid-to-late October 2022, the Ochoas, Zavala, and Sanchez told prospective investors via Zoom meetings, WhatsApp messages, and text messages to invest in an entity called "24/7 Academy," which – just like CryptoFX – would provide returns from trading in crypto assets.  The Ochoas, Zavala, and Sanchez told investors that an additional investment of at least $1,000 in 24/7 Academy would ensure that they would receive their promised CryptoFX returns.  However, 24/7 Academy did not have any actual operations and was apparently created by Zavala simply to solicit a new influx of funds to keep the scheme going.

## IV.     Gabriel Ochoa Sought to Impede Investors from Cooperating with the SEC

57.     Gabriel Ochoa also attempted to silence investors and prevent them from cooperating (or continuing to cooperate) with the SEC.  In or around May 2023, Gabriel Ochoa met with two CryptoFX investors in Zion, Illinois.  The investors asked Gabriel Ochoa when they could expect their investment returns and how they should proceed in light of the Commission's lawsuit against CryptoFX.  Ochoa told them that he would help them obtain the return of their CryptoFX investment money *if* they took back everything they had said to the SEC and other law enforcement authorities.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]

*Against Defendants Gloria Castaneda, Dulce Ochoa, Gabriel Ochoa, Ismael Zarco Sanchez, Maria Saravia, and Roberto Zavala*

58.     Plaintiff re-alleges and incorporates paragraphs 1 through 57 of this Complaint by reference as if set forth verbatim in this Claim.

59.     By engaging in the acts and conduct alleged herein, Defendants Gloria Castaneda, Dulce Ochoa, Gabriel Ochoa, Ismael Zarco Sanchez, Maria Saravia, and Roberto Zavala, directly or indirectly, in connection with the purchase or sale of securities, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or with severe recklessness:

      a.   employed a device, scheme, or artifice to defraud; and/or

      b.   made an untrue statement of a material fact, or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

      c.   engaged in an act, practice, or course of business which operated or would operate as a fraud or deceit upon any person.

60.     By reason of the foregoing, Defendants Gloria Castaneda, Dulce Ochoa, Gabriel Ochoa, Ismael Zarco Sanchez, Maria Saravia, and Roberto Zavala have violated, and unless enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## SECOND CLAIM FOR RELIEF

### Violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]

*Against Defendants Gloria Castaneda, Dulce Ochoa, Gabriel Ochoa, Ismael Zarco Sanchez, Maria Saravia, and Roberto Zavala*

61.     Plaintiff re-alleges and incorporates paragraphs 1 through 57 of this Complaint by reference as if set forth verbatim in this Claim.

62.     By engaging in the acts and conduct alleged herein, Defendants Gloria Castaneda, Dulce Ochoa, Gabriel Ochoa, Ismael Zarco Sanchez, Maria Saravia, and Roberto Zavala, directly or indirectly, in the offer or sale of securities, by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, have:

      a.   knowingly or with severe recklessness employed a device, scheme, or artifice to defraud; and/or

      b.   knowingly, recklessly, or negligently obtained money or property by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

      c.   knowingly, recklessly, or negligently engaged in a transaction, practice, or course of business which operated or would operate as a fraud or deceit upon the purchaser.

63.     By reason of the foregoing, Defendants Gloria Castaneda, Dulce Ochoa, Gabriel Ochoa, Ismael Zarco Sanchez, Maria Saravia, and Roberto Zavala have violated, and unless enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## THIRD CLAIM FOR RELIEF

**Violations of Sections 5(a) and (c) of the Securities Act [15 U.S.C. §§ 77e(a) & (c)]**

### *Against all Defendants*

64.     Plaintiff re-alleges and incorporates paragraphs 1 through 57 of this Complaint by reference as if set forth verbatim in this Claim.

65.     By engaging in the acts and conduct alleged herein, each of the Defendants, directly or indirectly:

> a.   made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of any prospectus or otherwise, securities as to which no registration statement was in effect; and/or

> b.   for the purpose of sale or delivery after sale, carried or caused to be carried through the mails or in interstate commerce, by means or instruments of transportation, securities as to which no registration statement was in effect; and/or

> c.   made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell, through the use or medium of any prospectus or otherwise, securities as to which no registration statement had been filed.

66.     By engaging in the conduct described above, each of the Defendants have violated, and unless enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and (c)].

## FOURTH CLAIM FOR RELIEF

**Violations of Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)]**

***Against all Defendants***

67.     The Commission repeats and re-alleges Paragraphs 1 through 57 of the Complaint as if fully set forth herein.

68.     By engaging in the acts and conduct alleged herein, Defendants each acted as a broker within the meaning of Section 3(a)(4) of the Exchange Act [15 U.S.C. § 78c(4)], and made use of the mails or the means or instrumentality of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase or sale of, a security without being registered with the SEC as a broker or dealer or as an associated person of a registered broker or dealer, in accordance with Section 15(b) of the Exchange Act.

69.     By engaging in this conduct, Defendants have violated, and unless enjoined will continue to violate, Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)].

## FIFTH CLAIM FOR RELIEF

**Violation of Rule 21F-17 of the Exchange Act [17 C.F.R. § 240.21F-17]**

***Against Defendant Gabriel Ochoa***

70.     The Commission repeats and re-alleges Paragraphs 1 through 57 of the Complaint as if fully set forth herein.

71.     By engaging in the acts and conduct alleged herein, Gabriel Ochoa took actions to impede individuals from communicating directly with SEC staff about possible securities law violations, including by telling CryptoFX investors that he would help them get their money back if they retracted everything they had previously said to the SEC staff.

72.     By engaging in this conduct, Defendant Gabriel Ochoa violated, and unless

enjoined will continue to violate, Rule 21F-17 of the Exchange Act [17 C.F.R. § 240.21F-17].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a judgment:

A.    Permanently enjoining Defendants Gloria Castaneda, Dulce Ochoa, Gabriel Ochoa, Ismael Zarco Sanchez, Maria Saravia, and Roberto Zavala from violating Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a) and (c) and 77q(a)] and Sections 10(b) and 15(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78o] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

B.    Permanently enjoining Defendants Gabriel Arguelles, Hector Aquino, Orlin Wilfredo Turcios Castro, Carmen De la Cruz, Elizabeth Escoto, Reyna Guiffaro, Marco Antonio Lemus, Juan Puac, Luis Serrano, Julio Taffinder, and Claudia Velazquez from violating Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and (c)] and Section 15(a) of the Exchange Act [15 U.S.C. § 78o].

C.    Permanently enjoining Defendant Gabriel Ochoa from violating Rule 21F-17(a) of the Exchange Act [17 C.F.R. § 240.21F-17].

D.    Permanently enjoining Defendants Gloria Castaneda, Dulce Ochoa, Gabriel Ochoa, Ismael Zarco Sanchez, Maria Saravia, and Roberto Zavala from directly or indirectly, including, but not limited to, through any entity they own or control, participating in the issuance, purchase,

offer, or sale of any security; provided, however, that such injunctions shall not prevent them from purchasing or selling securities for their own personal accounts;

E.      Ordering all Defendants to disgorge ill-gotten gains as a result of the violations alleged herein, plus prejudgment interest on those amounts, pursuant to Exchange Act Sections 21(d)(3), 21(d)(5), and 21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)];

F.      Ordering all Defendants to pay civil penalties, pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], for violations of the federal securities laws as alleged herein; and

G.      Imposing such other and further relief as the Court may deem just and proper.


Dated:  March 14, 2024                     Respectfully submitted,


                                           UNITED STATES SECURITIES AND
                                           EXCHANGE COMMISSION


                                           _____
                                           Matthew J. Gulde
                                           Illinois Bar No. 6272325
                                           S.D. Texas Bar No. 1821299
                                           Jillian Harris
                                           Texas Bar No. 24087671
                                           S.D. Texas Bar No. 2669497
                                           United States Securities and
                                           Exchange Commission
                                           Burnett Plaza, Suite 1900
                                           801 Cherry Street, Unit 18
                                           Fort Worth, TX  76102
                                           Telephone: (817) 978-1410
                                           Facsimile: (817) 978-4927
                                           guldem@sec.gov

                                           *Attorney for Plaintiff*