IN THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT
OF TEXAS HOUSTON DIVISION

SECURITIES AND EXCHANGE COMMISSION
    Plaintiff,

v.                                                 Civil Action No. 4:24-cv-939

ISAMEL ZARCO SANCHEZ, etc.
    Defendants

## ISMAEL ZARCO SANCHEZ RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Comes Now, Isamel Sanchez, who files this Response to Plaintiff's Motion for Summary Judgment and in support of would respectfully submit the following:

## I.
## STATEMENT OF THE CASE

Plaintiff sued 17 defendants including Isamel Sanchez. The lawsuit accused the Defendants of violating Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a) and (c)]; and (2) Section 15(a) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78(a)(1)]. The Court must also resolve whether the Defendants violated: (3) Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]; and (4) Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]. The lawsuit accuses the Defendants of selling unregistered securities and of committing fraud. Plaintiff seeks a permanent injunction, disgorgement of alleged ill-gotten proceeds and civil penalties.

1

Of the 17 Defendants originally named in this suit, the SEC has settled with three (Julio Taffinder, Luis Serrano, and Marco Antonio Lemus). Eight of the remaining Defendants (Gloria Castaneda, Dulce Ochoa, Gabriel Ochoa, Gabriel Arguelles, Hector Aquino, Carmen de la Cruz, Juan Puac, and Claudio Velazquez) have not appeared in this action and are therefore in default. On June 12, 2025, the SEC filed a request for the Clerk to enter default as to these eight Defendants and will file a motion for default judgments thereafter. Six Defendants have appeared in this matter and four are addressed in this Motion. The remaining two Defendants (Elizabeth Escoto and Reyna Guiffaro) have, within the last few days, executed consents agreeing to the entry of bifurcated judgments against them resolving all issues of liability. The SEC intends to present these consents and accompanying judgments to the Court shortly.

## II.
## SUMMARY OF ARGUMENT

Competent summary judgment evidence raises genuine issues of material fact whether Defendant Sanchez violated the Securities Act of 1933. Further, competent summary judgment evidence raises a genuine issue of material fact whether Defendant Sanchez committed fraud.

## III.
## EVIDENCE IN SUPPORT OF RESPONSE

Ex. 1- Excerpts Deposition of Anna Munoz

Also, Defendant Sanchez relies on the exhibits submitted by Plaintiff in his response.

# IV.
# DISPUTED MATERIAL FACTS

Defendant Sanchez does not agree that the facts support the investors were promised returns of 15% to 100% in the venture agreements. Dkt 65 at 4. The venture agreements stated that a person is contributing money to learn how to invest in Crypto. [Plaintiff's Ex. 41 & 42 App. 1733-1750] The contracts stated the venture was risky and speculative. Id. The agreement was explicit that it is not an investment; but an educational opportunity. Id. The contracts stated that the student that the money was being invested on behalf of CryptoFx and not the student. Id. Further, the agreement stated that only if enough of a return was paid would the student be refunded a portion of their tuition back. Id. The contracts reads as the individual should expect to learn how to invest Crypto currency. Id. The contract states the student may lose money. Id.

Sanchez disputes that he told investors that he made 11 million in 2018 and disputes that he admitted he made that false statement. Dkt 65 at 11. Sanchez did not tell investors that he made 11 million in two years. He told the investors in the seminar and confirmed in his deposition that he began investing in Crypto in 2017. [Plaintiff's Ex. 18 App. 569 and Ex. 8 App. 360, 361, & 362]. He stated in the seminar that he had made 11 million so far. In his depo, he confirms that he was attempting to say that he made 11 million in gains but because it was volatile market he had also suffered losses since 2018. [Ex. 8 Id. at App. 361]. Both at the deposition and in its motion, Plaintiff misconstrues what was said and what Mr. Sanchez's intent was in making the statement. [Id. at App. 361, 362].

Sanchez disputes that he played a significant role in administering the CryptoFX scheme and making Ponzi payments. Dkt at 13,14. Plaintiff provides no evidence in the record that Sanchez had knowledge that students in the academy could not gain significant commission because CryptoFX was a Ponzi scheme that generated no returns from investment activity. Sanchez's deposition testimony revealed that Chavez had misled him by showing him a Crypto Wallet with returns of 14 million and tell him that was CyyptoFX gains for 2020. [Plaintiff's Ex. 8 Id. at App 335 p. 28:1-25].

Sanchez further testified that when he tried to question Chavez about CryptoFX earnings, Sanchez told him it was private information. [Id. at App. 337 p. 30:1-7]. Sanchez further testified that he did not know who traded Crypto at the company. [Id. at App. 336 p. 29:16-17]. In 2022, Sanchez requested more information from Chavez about earnings and was told that the company would become a public company and be registered. [ Id. at App. 337 p. 30:8-16].

Sanchez disputes that he continued to sign up investors when he was told the company had a deficit. Dkt 65 at 17. Sanchez testified in his deposition that he did not assist with the execution of contracts [App. 342 p. 37:15-18]. Anna Munoz testified in her deposition that Ismael did not directly solicit investors of CryptoFX. [Defendant's Exhibit 1 p. 249:12-15] Also, Sanchez testified that he brought in three of his friends when he first learned of CryptoFX. [Id. at App. 338 p.33:16-25]. He testified he did not bring in new investors after these initial three. Id.

Sanchez also disputes that he created digital wallets to perpetrate fraud. Dkt. 65 at 18. Sanchez said he did it so that individuals could be repaid. [Id. at App 408 p. 165:4-7].

# V.
# MATERIAL FACTS NOT IN DISPUTE

Sanchez does not dispute that Mauricio Chavez orchestrated a Ponzi scheme through Crypto FX and that money was paid into the company. Dkt 65 He also does not dispute that CryptoFX did not trade Crypto currency. Dkt 65 Sanchez also does not dispute that individuals were not repaid monies those individuals paid into CryptoFX. Dkt 65.

# VI.

# VII.
# LEGAL ISSUES PRESENTED

1. Did the transactions between the Defendants and the individual investors violate the Securities and Exchange Act of 1933 because the agreements and marketing materials were securities; and therefore, required to be registered and sold by licensed brokers?
2. Did Defendant Sanchez defraud any investors in violation of the securities act?

# VIII.
# SUMMARY JUDGMENT STANDARD

The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The

moving party is "entitled to a judgment as a matter of law" because the nonmoving party "has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 32295-25 (1986).

"Review of a district court's ruling on a motion for summary judgment is plenary." *Lavespere v. Niagara Mach. & Tool Works*, 910 F.2d 167, 177 (5th Cir.1990). "The appeals court applies the same standards as those that govern the district court's determination." Id. "Summary judgment is appropriate only if there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P.* 56(c). To determine whether there are any genuine issues of material fact, the court must first consult the applicable law to ascertain what factual issues are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). After that, the court must review the evidence bearing on those issues, viewing the facts and inferences in the light most favorable to the nonmoving party. *Lavespere*, 910 F.2d at 178.

In summary judgment proceedings, the rules governing burden of proof are extremely important. The moving party bears the burden of establishing there are no genuine issues of material fact. *Lavespere*, 910 F.2d at 178. Once the moving party makes that showing, however, the burden shifts to the nonmoving party to show that summary judgment is not appropriate. Id. The nonmoving party cannot discharge that burden by referring to the "mere allegations or denials" of his pleadings; rather, that party must, either by submitting opposing evidentiary documents or by referring to evidentiary documents already in the record, set out specific facts showing that a genuine issue exists. Fed. R. Civ. P. 56(e). If the opposing party does not so respond, summary judgment, if appropriate, may

6

be entered against the opposing party. *Fields s v City of South Houston,* 922 F.2d 1183, 1187(5th Cir. 1991)

The Supreme Court explained that the standard for granting summary judgment mirrors the standard for a directed verdict. Anderson v. Liberty Lobby, Inc.,477 U.S. 242, 247-48, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." Id. at 247-48, 106 S.Ct. at 2509-10. Nor is the "mere existence of a scintilla of evidence" sufficient; "there must be evidence on which the jury could reasonably find for the plaintiff." Id. at 252, 106 S.Ct. at 2512.

## IX.
## ARGUMENTS & AUTHORITIES

**I. There is a genuine issue of material fact as to whether the venture agreements and educational program offered by CryptoFX are Securities.**

The Securities Act of 1933 defined a security as follows: "The term "security" means any note, stock, treasury stock, security future, security-based swap, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, *investment contract*, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to

7

foreign currency, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing."15 U.S.C. § 77b(a)(1).

Plaintiff alleges that Sanchez sold and marketed securities because it alleges the agreements signed by CryptoFX participants are "investment contracts." Dkt 65 at 21. The United States Supreme Court held: "[A]n investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise." *SEC v. W.J. Howey Co.,* 328 U.S. 293, 298–99, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946).

It is not in dispute that the participants in Crypto FX paid money into the company. Therefore, Sanchez does not dispute the first part of the Howey test is satisfied.

The Fifth Circuit has acknowledged that the second and third prongs overlap although listed as separate prongs in Howey. Under our "broad vertical commonality approach, "the second and third prongs of the *Howey* test may in some cases overlap to a significant degree."[15] The Fifth Circuit has determined that common enterprise, the second prong, can be proven by a showing of "vertical commonality," which is based on the relationship between the promotor and the investors, can also satisfy the requirement of a common enterprise. *See, e.g., SEC v. Koscot Interplanetary, Inc.*, 497 F.2d 473, 479 (5th Cir. 1974).

8

In an enterprise marked by vertical commonality, the investors' fortunes need not rise and fall together; a pro-rata sharing of profits and losses is not required. *Id.* Two distinct kinds of vertical commonality have been identified: "broad vertical commonality" and "strict vertical commonality". To establish "broad vertical commonality", the fortunes of the investors need be linked only to the *efforts* of the promoter.... "Strict vertical commonality" requires that the fortunes of investors be tied to the *fortunes* of the promoter." *Id.*

The third element of the *Howey* standard is that the investor "is led to expect profits solely from the efforts of the promoter or a third party." 328 U.S. at 299, 66 S.Ct. 1100. The D.C. Circuit has softened the impact of "solely" by requiring only that profits be generated "predominantly" from the efforts of others. *SEC v. Int'l Loan Network, Inc.*, 968 F.2d 1304, 1308 (D.C. Cir. 1992). Sec. & Exch. Comm'n v. Binance Holdings Ltd., 738 F. Supp. 3d 20, 47 (D.D.C. 2024).

The Fifth Circuit, in a recent securities case, inquired into "whether the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise."[16] In that case, the court found the lenders' profits depended on more than just the promoter's "undeniably significant" efforts, going beyond what the court historically required. The profits were inextricably and entirely dependent on the promoter's work in developing and managing real estate properties. Sec. & Exch. Comm'n v. Barton, 135 F.4th 206, 216–17 (5th Cir. 2025). They also found that the lenders expected profits.

In our case, there is a genuine issue of material fact as to whether the participants in

9

CryptoFX expected profits. The venture agreements state that person is contributing money to learn how to invest in Crypto. [Plaintiff's Ex. 41 & 42 App. 1733-1750] The contracts state the venture is risky and speculative. *Id.* The agreement is explicit that it is not an investment; but an educational academy. *Id.* The contracts express that the money is being invested on behalf of CryptoFx and not the student. Id. Further, the agreement states that only if enough of a return is paid will the student be refunded a portion of their tuition back. *Id.* The contracts reads as if the individual should expect to learn how to invest Crypto currency. *Id.* The contract states the student may lose money. *Id*.

There is also a genuine issue of material fact as to whether the individuals who signed the venture agreements with CryptoFX were led to expect profits predominately from the efforts of others. *Barton* is distinguishable from the facts of our case.

"The lenders relied on Barton's expertise (the second prong) *to obtain profits* (the third prong). And Barton's promotional materials promised the lenders that exact outcome—the opportunity to make profits. Finally, the lenders' profits were wholly dependent on the efforts of others—Barton and Wall. Here, the lenders' profits depend on more than just Barton's and Wall's "undeniably significant" efforts, going beyond what we have historically required. The profits here are inextricably and entirely dependent on Barton's and Wall's work developing and managing the properties. Accordingly, the loan agreements qualify as investment contracts, and thus as securities—so we need not assess whether they also qualify as notes. And as a result, the district court correctly found it had subject-matter jurisdiction." Sec. & Exch. Comm'n v. Barton, 135 F.4th 206, 216–17 (5th Cir. 2025.

10

The venture agreements signed by CryptoFX students do not express similar guarantees as made by *Barton*. As stated earlier, the venture agreements merely promise that students will receive a portion of their tuition back. [Ex. Plaintiff's Ex. 41 & 42]. In the promotional seminars that Plaintiff attaches evidence, the evidence demonstrates the students were told the success of the enterprise was derived from the strength of the Cryptocurrency markets and not the expertise of promoters at CryptoFX. [Plaintiff's Ex. 13 App. 000539-000540]. CryptoFx promoters distinguished between money in a bank as versus cryptocurrency transactions. [*Id*. at App. 000543-000545]. Sanchez, at the seminar, discusses people becoming wealthy from Crypto investments while involved with CryptoFX. [Plaintiff's Ex. 16 App. 551]. However, he does not discuss that it occurred because of the expertise of anyone. *Id.* It appears he is merely discussing people investing in cryptocurrency instead of traditional banking institutions. *Id.*

The Plaintiff's motion ignores that the primary pitch from the CryptoFx promotors was not the expertise of the leaders but the strength of the cryptocurrency market and its superiority over banks and common money transactions. [*Id*. at App. 000543-000545]. Students could gain money by bringing in other students and from the rise of the Cryptocurrency markets.

There are individuals who paid funds to CryptoFX that have provided statements that they expected a return on their investment because the company leaders would buy "high and sell low." [Plaintiff's Ex. 19 App. 000611] Those statements are contradicted by the venture agreements and the statements made at the seminars. The difference in the terms of the agreements versus their sworn statements creates a genuine issue of material

11

fact regarding whether the profits were derived predominately from the efforts of others. *Lavespere*, 910 F.2d at 178. The existence of a genuine issue of material fact precludes the court from awarding Plaintiff a summary judgment on this issue. *Id.*

If the agreements were not securities, then, Sanchez was not required to register them or be a licensed broker. 15 U.S.C. § 78(a)(1). 15 U.S.C. § 77b(a)(l); 15 U.S.C. § 78c(a)(10). Therefore, a genuine issue of material fact exists as to whether he violated those parts of the act.

    I.    There is a genuine issue of material fact as to whether Sanchez committed fraud against individuals who paid monies into CryptoFX.

Plaintiff alleges Sanchez committed fraud as follows: "**Sanchez** similarly made misstatements and omissions to investors, representing that (1) they could earn significant commissions, enough to retire or earn six-figure sums, and (2) he was a crypto expert who had earned $11 million in two years through crypto-assets. Plaintiff's Ex. 18, Trans., at 21 [APP. 569]. These statements were both false: investors could not gain significant commissions because CryptoFX was a precariously constructed Ponzi scheme that generated no returns from trading activity. Sanchez also admits that he never made $11 million, and that he does not consider himself an expert in crypto. Ex. 8, Sanchez Depo. 23:8-10, 64:18-66:9 [APP. 332, 360-362]. Sanchez also (3) failed to disclose to at least one investor that he would use the investor's funds to purchase a property rather than to invest in CryptoFX. *See* Ex. 20, Llangari Decl. ¶¶ 7, 11 & Att. SEC-LlangariMJ-E-0000001-2 [APP. 615-616, 618-619]; Ex. 36, Single Ledger Balance, at CTofTxLLC0213 [APP. 1680]; Ex. 37, Wire Notice, at CTofTxLLC1498 [APP. 1686]. Following CryptoFX's

12

closure, Sanchez again misled investors by telling them that (4) they should not worry about the SEC's lawsuit and (5) they must invest in 24/7 Academy to recoup their investments in CryptoFX. Ex. 25, Velez Decl. ¶ 8 [APP. 1338]. In reality, 24/7 was part of the scam. Ex. 1, Zavala Depo. 119:9-12 [APP. 64]. See Dkt 65 at 32

To establish liability under Section 17(a)(2) of the Securities Act and Rule 10b-5(b) promulgated under Section 10(b) of the Exchange Act, the SEC must prove by a preponderance of the evidence: (a) a misrepresentation or omission of a fact; (b) that is material; (c) that is made in connection with the purchase, offer, or sale of a security; (d) with the requisite mental state; and (e) using means or instrumentalities of interstate commerce. 17 C.F.R. § 240.10b-5; *SEC v. Gann*, 565 F. 3d 932, 936 (5th Cir. 2009). Section 17(a)(2) also states that a defendant must, directly or indirectly, "obtain money or property" by means of a false or misleading statement. *See* 15 U.S.C. § 77q(a)(2). Violations of Section 10(b) and Rule 10b-5(b) require a showing of scienter, while violations of Section 17(a)(2) require only negligence. *See SEC v. Hopper*, No. Civ. H-04-1054, 2006 WL 778640 at *9 (S.D. Tex. Mar. 24, 2006). See Dkt 65 at 30.

In securities litigation, it is not enough to particularize false statements or fraudulent omissions made by a defendant; rather, for "each act or omission alleged" to be false or misleading, plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."

To determine whether the plaintiff has alleged facts giving rise to the requisite "strong inference," a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff. The inference that the

13

defendant acted with scienter need not be irrefutable, but it must be more than merely "reasonable" or "permissible"—it must be cogent and compelling, thus strong in light of other explanations. Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 310, 127 S. Ct. 2499, 2502, 168 L. Ed. 2d 179 (2007)

Sanchez did not tell investors that he made 11 million in two years. He told the investors in the seminar and confirmed in his deposition that he began investing in Crypto in 2017. [Plaintiff's Ex. 18 App. 569 and Ex. 8 App. 360, 361, & 362]. He stated in the seminar that he had made 11 million so far. In his depo, he confirms that he was attempting to say that he made 11 million in gains but because it was volatile market he had also suffered losses since 2018. [Ex. 8 Id. at App. 361]. Both at the deposition and in its motion, Plaintiff misconstrues what was said and what Mr. Sanchez's intent was. [Id. at App. 361, 362].

Further, Plaintiff provides no evidence in the record that Sanchez had knowledge that students in the academy could not gain significant commission because CryptoFX was a Ponzi scheme that generated no returns from investment activity. Plaintiff offers no evidence that Sanchez knew whether students Crypto was being traded at the time that the individuals he spoke too signed venture agreements or whether CryptoFx was a Ponzi scheme. He offers no evidence that Sanchez knew it was a Ponzi scheme. Conversely, Sanchez's deposition testimony revealed that Chavez had duped him by showing him a Crypto Wallet with returns of 14 million and tell him that was his gains for 2020. [Id. at App 335 p. 28:1-25].

Sanchez further testified that when he tried to question Chavez about CryptoFX

14

earnings, Sanchez told him it was private information. [Id. at App. 337 p. 30:1-7]. Sanchez further testified that he did not know who traded Crypto at the company. [Id. at App. 336 p. 29:16-17]. In 2022, Sanchez requested more information from Chavez about earnings and was told that the company would become a public company and be registered. [ Id. at App. 337 p. 30:8-16]. Chavez deceived Sanchez. *Id.*

Anna Munoz testified that based on her observations, she perceived that Israel and all the leaders trusted Chavez. [Defendants Ex. 1 p.253: 3-10]. Munoz further testified that she believed that the monies paid to investors was from profits that Chavez had made trading Bitcoin. [Id. p.254:2-11 & p.255:8-18]

Sanchez's testimony and Munoz's testimony create a genuine issue of material fact as to whether Sanchez had the requisite state of mind to commit fraud. There is no evidence that he knew that Chavez had ignited a Ponzi scheme or CryptoFX was lying about trading CryptoFX or that Chavez was providing false information about investment returns. Therefore, summary judgment should be denied.

## X.

### CONCLUSION

Summary Judgment should be denied because genuine issues of material fact exist as to whether Sanchez committed fraud and whether Defendants marketed and sold securities.

Respectfully Submitted,

*/s/ John LaGrappe*

LAGRAPPE LAW PLLC

440 Louisiana, Suite 900  
Houston, TX 77002  
Tel: (832) 880-2058  
Fax: (832) 598-2891  
Bar No. 11819580  
[jlagrappe@yahoo.com](jlagrappe@yahoo.com)  
[Federal ID NO. 146186](Federal ID NO. 146186)

**CERTIFICATE OF SERVICE**

On July 21, 2025 I served the foregoing document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5 (b)(2).

*/s/ John LaGrappe*