## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| **ISMAEL ZARCO SANCHEZ,** ) | |
| **GABRIEL ARGUELLES,** ) | |
| **HECTOR AQUINO,** ) | |
| **GLORIA CASTANEDA,** ) | |
| **ORLIN WILIFREDO TURCIOS CASTRO,** ) | |
| **CARMEN DE LA CRUZ,** ) | |
| **ELIZABETH ESCOTO,** ) Civil Action No 4:24-cv-939 | |
| **REYNA GUIFFARO,** ) | |
| **MARCO ANTONIO LEMUS,** ) JURY TRIAL DEMANDED | |
| **DULCE OCHOA,** ) | |
| **GABRIEL OCHOA,** ) | |
| **JUAN PUAC,** ) | |
| **MARIA SARAVIA,** ) | |
| **LUIS SERRANO,** ) | |
| **JULIO TAFFINDER,** ) | |
| **CLAUDIA VELAZQUEZ, and** ) | |
| **ROBERTO ZAVALA,** ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFF'S MOTION FOR FINAL JUDGMENTS BY DEFAULT AGAINST DEFENDANTS GABRIEL ARGUELLES, HECTOR AQUINO, GLORIA CASTANEDA, CARMEN DE LA CRUZ, DULCE OCHOA, GABRIEL OCHOA, JUAN PUAC, AND CLAUDIA VELAZQUEZ

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ......................................................... iii

INTRODUCTION AND ISSUES TO BE RULED UPON BY THE COURT .......................... 1

NATURE AND STAGE OF THE PROCEEDINGS ................................... 2

STATEMENT OF FACTS ....................................................... 3

I.      Procedural History ................................................ 3

II.     The Complaint's Factual Allegations Are Deemed Admitted Against Defendants ........ 4

     A.     Defendants acted as unregistered brokers when they offered and sold securities in unregistered offerings to the public .................. 4

     B.     The SEC filed suit against CryptoFX and its founder, Mauricio Chavez, on September 19, 2022 ..................................... 8

     C.     In addition to acting as an unregistered broker, Gloria Castaneda defrauded investors by knowingly perpetuating the CryptoFX scheme ..... 8

     D.     Defendants Dulce Ochoa and Gabriel Ochoa made misleading statements and omissions and tried to conceal the CryptoFX scheme ....... 9

     E.     Gabriel Ochoa sought to impede investors from cooperating with the SEC ................................................ 10

ARGUMENT .................................................................. 10

I.      The Default Judgment Standard ...................................... 10

     A.     A Default Judgment is Procedurally Warranted ...................... 11

     B.     The Complaint Establishes Defendants' Securities Laws Violations ...... 12

          1.     Defendants violated Sections 5(a) and (c) of the Securities Act ... 13

               a.   The CryptoFX Venture Agreements are Securities ................ 13

               b.   Defendants Offered and Sold Venture Agreements in Unregistered Offerings Using Means of Interstate Transportation and Communication ....................... 14

i

2.    Defendants Violated Section 15(a) of the Exchange Act ............. 15

3.    The Fraud Defendants Violated Section 17(a) of the
      Securities Act and Section 10(b) of the Exchange Act and
      Rule 10b-5 Thereunder.................................................... 17

4.    Defendant Gabriel Ochoa violated Exchange Act
      Rule 21F-17(a) .............................................................. 19

C.    The SEC Is Entitled to the Relief Requested in Its Complaint ................ 20

1.    Permanent Injunctions Are Warranted.......................................... 20

      a.   Success on the Merits ............................................ 21

      b.   Likelihood of Irreparable Harm................................. 21

      c.   Balance of Equities and Public Interest .................................. 25

2.    Disgorgement is Warranted.......................................... 27

3.    Prejudgment Interest is Warranted................................. 29

4.    The Court Should Order Defendants to Pay Civil Penalties......... 30

CONCLUSION .................................................................. 34

## Table of Authorities

Cases

*Aaron v. SEC*,
    446 U.S. 680 (1980) ................................................................. 18

*Basic Inc. v. Levinson*
    485 U.S. 224 (1988) ................................................................. 18

*DIRECTV, Inc. v. Hamilton*,
    215 F.R.D. 460 (S.D.N.Y. 2003) ................................................................. 20

*FTC v. Silueta Distributors, Inc.*,
    No. 93-CV-4141, 1994 WL 387881 (N.D. Cal. July 11, 1994) ................................ 22

*FTC v. Your Yellow Pages, Inc.*,
    No. 14-CV-22129, 2014 WL 12537140 (S.D. Fla. July 1, 2014) ................................ 21

*J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*,
    126 F. Supp. 3d 809 (N.D. Tex. 2015) ................................................................. 4

*J & J Sports Prods., Inc. v. Circle R & R, Inc.*,
    No. 4:18-CV-1359, 2019 WL 937348 (S.D. Tex. Feb. 11, 2019) ................................ 20

*James v. Frame*,
    6 F.3d 307 (5th Cir. 1993) ................................................................. 20

*Joe Hand Promotions, Inc. v. 2 Tacos Bar & Grill, LLC*,
    No. 3:16-CV-01889, 2017 WL 373478 (N.D. Tex. Jan 26, 2017) ................................ 11, 12

*Lindsey v. Prive Corp.*,
    161 F.3d 886 (5th Cir. 1998) ................................................................. 11

*Living Bens. Asset Mgmt., L.L.C. v. Kestrel Aircraft Co.*,
    916 F.3d 528 (5th Cir. 2019) ................................................................. 14

*Long v. Shultz Cattle Co.*,
    881 F.2d 129 (5th Cir. 1989) ................................................................. 14

*Mason v. Lister*,
    562 F.2d 343 (5th Cir. 1977) ................................................................. 10

*Meadows v. SEC*,
   119 F.3d 1219 (5th Cir. 1997) ...................................................................... 18

*Nishimatsu Constr. Co. v. Houston Nat'l Bank*,
   515 F.2d 1200 (5th Cir. 1973) ................................................................. 4, 11

*Quinn v. SEC*,
   43 U.S. 1034 (2004) ................................................................................... 29

*Reves v. Ernst & Young*,
   494 U.S. 56 (1990) ..................................................................................... 14

*SEC v. Ahmed*,
   72 F.4th 379 (2d Cir. 2023) ....................................................................... 25

*SEC v. AmeraTex Energy, Inc.*,
   No. 4:18-CV-00129, 2021 WL 1061395 (E.D. Tex. Mar 18, 2021) .......................... 26

*SEC v. AMX, Int'l, Inc.*,
   7 F.3d 71 (5th Cir. 1993) ........................................................................... 27

*SEC v. Blackburn*,
   15 F.4th 676 (5th Cir. 2021) ...................................................................... 29

*SEC v. Blatt*,
   583 F.2d 1325 (5th Cir. 1978) .................................................................... 22

*SEC v. Chappell*,
   107 F.4th 114 (3d Cir. 2024) ................................................................. 21, 25

*SEC v. Collyard*,
   861 F.3d 760 (8th Cir. 2017) ..................................................................... 16

*SEC v. Cont'l Tobacco Co. of S.C.*,
   463 F.2d 137 (5th Cir. 1972) ................................................................. 13, 15

*SEC v. Crumbley*,
   No. 3:16-CV-0172-L, 2022 WL 1505868 (N.D. Tex. May 11, 2022) ...................... 34

*SEC v. Faulkner*,
   No. 3:16-CV-1735-D, 2021 WL 75551 (N.D. Tex Jan. 8, 2021) ........................... 26

*SEC v. First City Fin'l Corp.*,
　890 F.2d 1215 (D.C. Cir. 1989) ................................................................. 27

*SEC v. Fox*,
　No. 4:17-CV-271, 2018 WL 1210858 (E.D. Tex. March 8, 2018) ............................ 31

*SEC v. Gann*,
　565 F.3d 932 (5th Cir. 2009) ................................................................. 22

*SEC v. Gentile*,
　939 F.3d 549 (3d Cir. 2019) ................................................................. 21

*SEC v. Gunn*,
　3:08-CV-1013, 2010 WL 3359465 (N.D. Tex. Aug. 25, 2010) ................................ 29

*SEC v. Hallam*,
　42 F.4th 316 (5th Cir. 2022) ................................................................. 27

*SEC v. Hansen*,
　No. 83 Civ. 3692, 1984 WL 2413 (S.D.N.Y April 6, 1984) ................................ 16

*SEC v. Helms*,
　No. 1:13-CV-01036 ML, 2015 WL 5010298 (W.D. Tex. Aug. 21, 2015) ..... 19, 27, 29

*SEC v. Holschuh*,
　694 F.2d 130 (7th Cir. 1982) ................................................................. 18

*SEC v. Jankovic*,
　No. 15 CIV. 1248 (KPF), 2018 WL 301160 (S.D.N.Y. Jan. 4, 2018) ...................... 32

*SEC v. Killion*,
　No. 16-CV-621, 2017 WL 7052310 (S.D. Tex. Mar. 24, 2017) ............................ 17

*SEC v. Lake Havasu Ests.*,
　340 F. Supp. 1318 (D. Minn. 1972) ......................................................... 22

*SEC v. Life Partners Holdings, Inc.*,
　71 F. Supp. 3d 615 (W.D. Tex. Dec. 2, 2014) .......................................... 30-31

*SEC v. Liu*,
　140 S. Ct. 1936 (2020) ......................................................................... 27

*SEC v. Manor Nursing Centers, Inc.*,
    458 F.2d 1082 (2d Cir. 1972) ................................................... 25

*SEC v. Mauricio Chavez, et al.*,
    4:22-CV-3359 (S.D. Tex. Sept. 19, 2022) ................................... 7

*SEC v. Mieka Energy Corp.*,
    259 F. Supp. 3d 556 (E.D. Tex. 2017) ...................................... 17

*SEC v. Millennium Bank*,
    No. 7:09-CV-00050-O, 2011 WL 13233635 (N.D. Tex. Mar. 15, 2011) .................. 24

*SEC v. Moss*,
    No. 4:20-CV-972-SDJ, 2022 WL 757226 (E.D. Tex. Mar. 11, 2022) ..................... 16

*SEC v. Murphy*,
    626 F.2d 633 (9th Cir. 1980) .................................................. 22

*SEC v. Offill*,
    No. 3:07-CV-1643-D, 2012 WL 246061 (N.D. Tex. Jan. 26, 2012) ........................ 15

*SEC v. Offill*,
    No. 3:07-CV-1643-D, 2012 WL 1138622 (N.D. Tex. Apr. 5, 2012) .................. 30-32

*SEC v. Patel*,
    61 F.3d 137 (2d Cir. 1995) ................................................... 27

*SEC v. Razmilovic*,
    822 F. Supp. 2d 234 (E.D.N.Y. 2011) ........................................ 32

*SEC v. Reynolds*,
    No. 3:08-CV-0438-B, 2013 WL 3479825 (N.D. Tex. July 11, 2013) ..................... 32

*SEC v. Sneed*,
    No. 3:20-CV-2988-S-BH, 2021 WL 4202171 (N.D. Tex. Sept. 10, 2021) ............... 26

*SEC v. Stanford Int'l Bank, Ltd.*,
    No. 3:09-CV-0298-N, 2013 WL 12360438 (N.D. Tex. Apr. 25, 2013) ..................... 17

*SEC v. Straub*,
    921 F. Supp. 2d 244 (S.D.N.Y. 2013) ........................................ 15

*SEC v. Teshuater, LLC,*
    No. 4:20-CV-01187, 2024 WL 1348432 (S.D. Tex. Mar. 29, 2024) ......................... 15

*SEC v. United Energy Partners, Inc.,*
    88 F. App'x 744 (5th Cir. 2004) (per curiam) ............................................................ 29

*SEC v. Voight,*
    No. CV H-15-2218, 2021 WL 5181062 (S.D. Tex. June 28, 2021) .....................26-27

*SEC v. Wilson,*
    No. 4:22-CV-00741-O, 2022 WL 18275941 (N.D. Tex. Dec. 28, 2022) .................. 27

*SEC v. WJ. Howey Co.,*
    328 U.S. 293 (1946) .................................................................................................. 14

*SEC v. Zale Corp.,*
    650 F.2d 718 (5th Cir. 1981) .................................................................................... 22

*Starbucks v. McKinney,*
    144 S. Ct. 1570 (2024) .............................................................................................. 21

*Sun Bank of Ocala v. Pelican Homestead & Savings Ass'n,*
    874 F.2d 274 (5th Cir. 1989) .................................................................................... 10

*Swenson v. Engelstad,*
    626 F.2d 421 (5th Cir. 1980) .................................................................................... 13

*TSC Indus. v. Northway,*
    426 U.S. 438 (1976) .................................................................................................. 18

*United Artists Corp. v. Freeman,*
    605 F.2d 854 (5th Cir. 1979) .................................................................................... 20

*United States v. 1998 Freightliner VIN # 1FUYCZYB3WP886986,*
    548 F. Supp. 2d 381 (W.D. Tex. 2008) .................................................................... 11

*United States v. Bishop,*
    No. 3:17-CV-0822, 2017 WL 1509302 (N.D. Tex. Apr. 27, 2017) .......................... 11

*United States v. Kahen,*
    No. 20-CV-00474, 2020 WL 1697974 (E.D.N.Y. Jan. 28, 2020) ............................. 22

*Williamson v. Tucker*,
    645 F.2d 404 (5th Cir. 1981) ................................................................ 14

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) .......................................................................20-21, 25

## **Federal Statutes**

### *Securities Act of 1933*

Section 2
    [15 U.S.C. § 77b] ................................................................................ 13

Section 5
    [15 U.S.C. § 77e] ............................................................................ 1, 13

Section 17
    [15 U.S.C. § 77q] ........................................................................... 1, 17

Section 20
    [15 U.S.C. § 77t].............................................2, 20, 26, 30-31, 33

### *Securities Exchange Act of 1934*

Section 3
    [15 U.S.C. § 78c] ........................................................................13, 15-16

Section 10
    [15 U.S.C. § 78j] ............................................................................ 1, 17

Section 15
    [15 U.S.C. § 78o] ........................................................................... 1, 15

Section 21
    [15 U.S.C. § 78u] ................................................... 2, 20, 26-27, 30-31, 33

Rule 10b-5
    17 C.F.R. § 240.10b5 .................................................................... 1, 17

Rule 21F-17(a)
    [17 C.F.R. § 240.21F-17].............................................................. 1, 19, 26

<u>*Investment Advisers Act of 1940*</u>

15 U.S.C. § 80b-9 ................................................................................................ 20

<u>*Federal Rules of Civil Procedure*</u>

Fed. R. Civ. P. 55 ................................................................................................... 1

<u>*Other*</u>

17 C.F.R. 201.1001 .............................................................................................. 31

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, Plaintiff Securities and Exchange Commission ("SEC") respectfully moves the Court to enter final judgments by default against Defendants Gabriel Arguelles, Hector Aquino, Gloria Castaneda, Carmen de la Cruz, Dulce Ochoa, Gabriel Ochoa, Juan Puac, and Claudia Velazquez (collectively, "Defendants") and submits the following brief in support:

## INTRODUCTION AND ISSUES TO BE RULED UPON BY THE COURT

The SEC's Complaint alleges that Defendants were high-level promoters of CryptoFX, LLC ("CryptoFX"), a cash Ponzi scheme that targeted Latino investors across multiple states and countries. The Complaint's allegations, which are deemed true for purposes of this Motion due to Defendants' default, show that Defendants violated the registration provisions of the federal securities laws, and that Defendants Dulce Ochoa, Gabriel Ochoa, and Gloria Castaneda ("Fraud Defendants") also violated the federal securities laws' antifraud provisions. The SEC therefore requests that the Court enter default judgments against Defendants that include the following:

1. A permanent injunction enjoining Defendants from violating Sections 5(a) and (c) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a) & (c)] and Section 15(a) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78o];

2. A permanent injunction enjoining Fraud Defendants Gloria Castaneda, Dulce Ochoa, and Gabriel Ochoa from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

3. A permanent injunction enjoining Defendant Gabriel Ochoa from violating Rule 21F-17(a) under the Exchange Act [17 C.F.R. § 240.21F-17(a)];

4. A permanent injunction enjoining Fraud Defendants Gloria Castaneda, Dulce Ochoa, and Gabriel Ochoa from directly or indirectly, including, but not

1

limited to, through any entity owned or controlled by him or her, participating in the issuance, purchase, offer, or sale of any securities; provided however that such injunction shall not prevent him or her from purchasing or selling securities for his or her own personal accounts;

5.   Ordering each of the Defendants to disgorge the net profits each Defendant gained as a result of the conduct described in the Complaint, plus prejudgment interest thereon, in the amounts set forth in the table below; and

6.   Ordering each of the Defendants to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], in the amounts set forth in the table below.[1]

| Defendant | Disgorgement Amount | Prejudgment Interest | Penalties | Total |
|---|---|---|---|---|
| Gabriel Arguelles | $55,843.00 | $5,481.27 | $55,843.00 | $117,167.27 |
| Hector Aquino | $55,169.00 | $5,415.10 | $55,169.00 | $115,753.10 |
| Gloria Castaneda | $548,865.90 | $53,873.92 | $548,865.90 | $1,151,605.72 |
| Carmen de la Cruz | $45,073.00 | $4,424.14 | $45,073.00 | $94,570.14 |
| Dulce Ochoa | $16,560.00 | $1,534.15 | $230,464.00 | $248,558.15 |
| Gabriel Ochoa | $473,401.52 | $43,856.99 | $473,401.52 | $990,660.03 |
| Juan Puac | $164,846.00 | $16,180.45 | $164,846.00 | $345,872.45 |
| Claudia Velazquez | $53,585.00 | $5,259.64 | $53,585.00 | $112,429.64 |

## NATURE AND STAGE OF THE PROCEEDINGS

Of the 17 defendants originally named in this case, the SEC has settled with three (Julio Taffinder, Luis Serrano, and Marco Antonio Lemus).  The SEC also filed a Motion for Partial Summary Judgment against four defendants (Maria Saravia, Orlin Wilifredo Turcios Castro, Ismael Sanchez, and Roberto Zavala).  That motion, however, is now pending only against defendant Ismael Sanchez, because Maria Saravia, Orlin Wilifredo

---

[1] The Declaration of Melvin Warren ("Warren Decl.") is Exhibit A [APP. 0001-8] to the SEC's Appendix in Support of this Motion and is fully incorporated herein.  The declaration sets forth the basis for the disgorgement and pre-judgment interest figures presented in this Motion.  All "APP." references are to the SEC's Appendix in Support of this Motion, filed herewith.

Turcios Castro, and Roberto Zavala subsequently consented to bifurcated judgments resolving liability.  The SEC has moved to enter bifurcated judgments against five defendants in total (Maria Saravia, Orlin Wilifredo Turcios Castro, Roberto Zavala, Elizabeth Escoto, and Reyna Guiffaro).  The eight remaining Defendants (Gabriel Arguelles, Hector Aquino, Gloria Castaneda, Carmen de la Cruz, Dulce Ochoa, Gabriel Ochoa, Juan Puac, and Claudia Velazquez) have defaulted and are the subjects of this Motion.

## STATEMENT OF FACTS

### I.    Procedural History

On March 14, 2024, the SEC filed its Complaint against Defendants, seeking injunctive and monetary relief.  Doc. 1.  The same day, the Clerk issued Summonses as to each of the Defendants.  Doc. 4.

Defendants were served on various dates.  *See* Doc. 62, Ex. A ¶ 3 (listing dates of service on each Defendant; dates on which executed proofs of service were filed with the Court; and dates on which each Defendant was required to file and serve a responsive pleading).  None of the Defendants has filed or served an answer, other responsive pleading, or otherwise defended him/herself in this action.  On June 12, 2025, the SEC filed a request for the Clerk to enter a default against each of the Defendants.  Doc. 62. On January 12, 2026, the Clerk entered a default against each of the Defendants.  Doc. 88

## II.    The Complaint's Factual Allegations Are Deemed Admitted Against Defendants.

Upon entry of default, courts are to assume a defendant admits the complaint's well-pleaded facts.  *J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 814 (N.D. Tex. 2015) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1973)).  Here, the Complaint plainly alleges that Defendants violated the federal securities laws by conducting unregistered securities offerings, acting as unregistered brokers, and, in the cases of the Fraud Defendants, defrauding investors:

### A.    Defendants acted as unregistered brokers when they offered and sold securities in unregistered offerings to the public.

Between May 2020 and September 2022, CryptoFX conducted a Ponzi scheme targeting Latino investors in which it raised more than $300 million from over 40,000 investors.  Doc. 1, Compl. ¶¶ 1, 32.  CryptoFX representatives claimed that its founder, Mauricio Chavez, would use investor funds to perform crypto-asset and foreign exchange ("forex") trading and would obtain guaranteed, consistent returns.  *Id.* ¶¶ 29, 33.  In reality, investor funds were used to make Ponzi payments, pay commissions to salespeople, and for personal expenses.  *Id.* ¶¶ 3, 33.

Defendants were salespeople in the CryptoFX organization (referred to as "Leaders"), who offered CryptoFX's securities (called "Venture Agreements") to thousands of investors across the country.  *Id.* ¶ 3.  CryptoFX Leaders were responsible for (1) soliciting new investors, (2) managing ongoing recruitment and referrals by other investors, (3) communicating bonuses and promotions, (4) documenting new

4

investments, (5) collecting investor funds, (6) sending some cash to CryptoFX's Houston headquarters, and (7) paying out purported investor returns. *Id.* ¶ 36.

As Leaders, each of the Defendants solicited investments in CryptoFX, including, but not limited to, the following:

a. In the summer of 2022, **Arguelles** told P.R. and her husband during a meeting in Mundelein, Illinois that: (i) they could earn 18% returns after six months by investing in CryptoFX, (ii) there was "no risk" investing, and (iii) their "money was guaranteed." As a result, P.R. gave Arguelles $5,000 in cash. *Id.* ¶ 40.b.

b. In the summer of 2022, **Aquino** solicited investor G.M. at a regularly-held CryptoFX meeting in Los Angeles. During the meeting, Aquino described his success with CryptoFX and promised 15% returns. As a result, G.M. gave Aquino $5,000 in cash. *Id.* ¶ 40.c.

c. On or around May 24, 2022, **Castaneda** promised M.V. that she would earn 18% returns in six months by investing in CryptoFX. Consequently, M.V. took out a $20,000 loan and gave Castaneda two separate $10,000 cash investments. *Id.* ¶ 40.d.

d. In May 2022, **de la Cruz** solicited M.M. to invest $5,000 in CryptoFX, telling her that she would receive 15% returns every three months. De la Cruz filled out M.M.'s Venture Agreement and accepted her $5,000 cash investment. *Id.* ¶ 40.f.

e. During a summer 2022 Zoom meeting, **Dulce Ochoa** promised investor I.M. that she would receive 18% returns after six months by investing in CryptoFX. Dulce Ochoa guaranteed that she would return I.M.'s entire investment principal, no matter what happened. Based on these representations, I.M. and her two brothers invested $52,500. *Id.* ¶ 40.j.

f. In April 2022, **Gabriel Ochoa** gave a presentation to investor J.B. and other potential investors, assuring them that their capital would not be at any risk if there was a war or power outage. The Ochoas operated the CryptoFX office in Waukegan, Illinois where these presentations were held. Further, Gabriel Ochoa led numerous in-person presentations promising 18% returns after six months based on Chavez's trading. *Id.* ¶ 40.k.

g. In April 2022, **Puac** pitched investor B.R. about the CryptoFX

"investing programs"—Bronze, Silver, and Gold—each with different minimum investment amounts.  After Puac told B.R. that he would receive 15% returns every three months, B.R. invested $11,000 in cash. *Id.* ¶ 40.l.

h.  In August 2022, **Velazquez** pitched investments in CryptoFX to investor S.Q., telling her that she would receive 30% returns every three months for a year on a $10,000 investment.  *Id.* ¶ 40.p.

In promoting CryptoFX to prospective investors, Defendants routinely used cell phones to communicate or meet with investors.  *Id.* ¶¶ 37, 40.  Defendants also presented at seminars held in meeting halls, hotels, and restaurants.  *Id.*  Defendants told prospective investors that CryptoFX would use their money to trade in crypto-asset and forex markets, which would generate returns of 15% to 100%.  *Id.*  Defendants described CryptoFX as the road to financial freedom and touted that it had created multiple millionaires.  *Id.*  Certain Defendants even told prospective investors that the investments were "risk-free" and that their principal was guaranteed even if there was a world war or power outage.  *Id.*

After soliciting new investors, Defendants instructed investors to execute Venture Agreements, which outlined the investment amounts, expected returns, and repayment dates.  *Id.* ¶ 38.  Investors gave Leaders, including Defendants, funds with the expectation CryptoFX would provide promised returns in set amounts on a regular schedule.  *Id.*  Investors typically made cash investments ranging from $500 to $300,000.  *Id.*  To carry out their scheme, Defendants used the mails or the means or instruments of transportation or communication by, among other things, soliciting investments via the Internet and

cell-phone communications.  *Id.* ¶ 30.  Multiple Defendants outside of Texas also transported investor cash to Texas.  *Id.* ¶ 30.

CryptoFX's business records[2] establish that each of the Defendants earned transaction-based compensation for offering and selling Venture Agreements in the form of commissions and bonuses, as well as returns on their personal investments in CryptoFX[3], in approximately the following amounts:

| Defendant | Compensation Amount |
|---|---|
| Gabriel Arguelles | $55,843.00 |
| Hector Aquino | $55,169.00 |
| Gloria Castaneda | $548,865.90 |
| Carmen de la Cruz | $45,073.00 |
| Dulce Ochoa | $16,560.00 |
| Gabriel Ochoa | $473,401.52 |
| Juan Puac | $164,846.00 |
| Claudia Velazquez | $53,585.00 |

*Id.* ¶¶ 39-40; Ex. A, Warren Decl. ¶¶ 7-30 [APP 0004-7].  Defendants' transaction-based earnings included 7% of the investments of all investors they personally brought in as "first-tier" investors; 3% of all funds solicited by first-tier investors; and an extra bonus when three of their referrals invested a certain amount set by Chavez.  Doc. 1, Compl. ¶ 39.

---

[2] The compensation amount for Castaneda reported here is also based on analysis of a spreadsheet she produced in the course of the SEC's investigation and CryptoFX business records.  *See* Ex. A, Warren Decl. ¶ 6 [APP. 0003-4].

[3] The Commission's complaint identifies these amounts as comprising "commissions and bonuses."  *See* doc. 1, Compl. ¶ 40.  As explained within the declaration from Melvin Warren, further analysis confirmed these amounts also include purported returns that were paid to Defendants (except Castaneda) based on their respective investments in CryptoFX.  *See* Ex. A, Warren Decl. ¶¶ 7-30 [APP. 0004-7].

**B.    The SEC filed suit against CryptoFX and its founder, Chavez, on September 19, 2022.**

The SEC's Complaint against CryptoFX, its founder Chavez, and CryptoFX insider, Giorgio Benvenuto, alleged that CryptoFX was a Ponzi scheme that used new investor funds to pay investor returns and commissions to CryptoFX insiders.  Complaint, *SEC v. Mauricio Chavez et al.*, 4:22-CV-3359 (S.D. Tex. Sept. 19, 2022), ECF No. 1. The Court granted a temporary restraining order (and later a preliminary injunction), an asset freeze, and appointed a receiver over CryptoFX and the assets of Chavez and Benvenuto.  Orders, 4:22-CV-3359 (S.D. Tex. filed Sept. 29, 2022), ECF Nos. 7, 10, & 11.  Chavez and Benvenuto have consented to judgments on liability in that suit. Judgments, 4:22-CV-3359 (S.D. Tex. filed Aug. 31, 2023 and Feb. 26, 2024), ECF Nos. 92, 114.

**C.    In addition to acting as an unregistered broker, Gloria Castaneda defrauded investors by knowingly perpetuating the CryptoFX scheme.**

Between January 2022 and September 2022, Castaneda received $11,647,557 in investments from investors and used $8,589,227 of those same funds to pay purported returns to earlier investors and pay commissions and bonuses to herself and those in her referral group.  *Id.* ¶ 53.  Castaneda only sent $921,244 (less than 8%) to Houston for Chavez to purportedly "trade."  *Id.*  Based on this behavior, Castaneda knew, or was severely reckless in not knowing, that she was making Ponzi payments rather than disbursing profits from crypto-asset and/or foreign-exchange trading.  *Id.* ¶¶ 50, 54.

After the SEC filed its lawsuit against CryptoFX, Castaneda and the Ochoas, alongside other Defendants, lied about investment-return payment dates, telling investors

that their returns would be paid in full in November 2022, and then moving the date to December 2022. *Id.* ¶ 55.

### D.    Defendants Dulce Ochoa and Gabriel Ochoa made misleading statements and omissions and tried to conceal the CryptoFX scheme.

Though they admitted in a December 2022 Facebook video to learning about the SEC's lawsuit in early October 2022, husband and wife Gabriel and Dulce Ochoa continued to solicit investors as late as October 21, 2022. *Id.* ¶¶ 46-48. On or about October 21, 2022, the Ochoas visited investor E.M. in North Carolina and told E.M. that CryptoFX would double her investment in six months. *Id.* ¶ 48. As a result, E.M. signed a contract and gave the Ochoas $5,000 in cash to invest with CryptoFX. *Id.* Neither Gabriel nor Dulce Ochoa ever informed E.M. that CryptoFX had been sued by the SEC, was in receivership and subject to an asset freeze and a preliminary injunction, or that CryptoFX had operated as a Ponzi scheme. *Id.* ¶ 49.

More than a month after the SEC filed its lawsuit against CryptoFX, the Ochoas told investors that they would double their money after six months through Chavez's crypto-asset trading, even though they knew that: (a) CryptoFX was in receivership and subject to an asset freeze and a preliminary injunction; and (b) Chavez was restrained and enjoined from engaging in such activity. *Id.* ¶ 48. They also told investors via text and WhatsApp messages that their CryptoFX office would be closed for an "adaptation program" and that CryptoFX was going to pay new CryptoFX contracts in this adaptation program with Bitcoin via digital wallets. *Id.* ¶ 47.

In mid-to-late October 2022, the Ochoas also solicited prospective investors via Zoom meetings, WhatsApp messages, and text messages to invest in a purportedly new entity called "24/7 Academy," which—like CryptoFX—would provide returns from trading in crypto-assets. *Id.* ¶ 56.  The Ochoas and others told investors that an additional investment of at least $1,000 in 24/7 Academy would ensure that investors would receive their promised CryptoFX returns. *Id.*  24/7 Academy did not have any actual operations and was apparently created simply to solicit a new influx of funds to keep the scheme going. *Id.*

### E.     Gabriel Ochoa sought to impede investors from cooperating with the SEC.

In or around May 2023, Gabriel Ochoa met with two CryptoFX investors in Zion, Illinois. *Id.* ¶ 57.  The investors asked him when they could expect their investment returns and how to proceed in light of the SEC's lawsuit. *Id.*  Ochoa told them that he would help them obtain the return of their CryptoFX investment money *if* they took back everything they had said to the SEC and other law enforcement authorities. *Id.*

### ARGUMENT

## I.     The Default Judgment Standard.

Default judgments are appropriate when, as here, "the adversary process has been halted because of [an] essentially unresponsive party." *Sun Bank of Ocala v. Pelican Homestead & Savings Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (internal quotation omitted).  The entry of a default judgment is left to the "sound judicial discretion" of the Court. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).

To determine whether a default judgment is warranted, courts perform a three-part analysis. *See, e.g.*, *United States v. 1998 Freightliner VIN # 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 383-384 (W.D. Tex. 2008). A court must determine: (1) whether default judgment is procedurally warranted; (2) whether the complaint sufficiently sets forth facts establishing that the plaintiff is entitled to relief; and (3) what form of relief, if any, the plaintiff is entitled to receive. *Id.*; *see also United States v. Bishop*, No. 3:17-CV-0822, 2017 WL 1509302, at *1-2 (N.D. Tex. Apr. 27, 2017).

## A.   A Default Judgment is Procedurally Warranted.

To determine whether a default judgment is procedurally warranted, courts examine six factors:

(1)   whether material issues of fact are at issue;
(2)   whether there has been substantial prejudice;
(3)   whether grounds for default are clearly established;
(4)   whether default was caused by good faith mistake or excusable neglect;
(5)   the harshness of the default judgment; and
(6)   whether the court would feel obligated to set aside a default on the defendant's motion.

*Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998); *Joe Hand Promotions, Inc. v. 2 Tacos Bar & Grill, LLC*, No. 3:16-CV-01889, 2017 WL 373478, at *1 (N.D. Tex. Jan. 26, 2017).

The *Lindsey* factors favor granting a default judgment here. (1) No material issues of fact exist. As noted, the Court may—and should—take the facts from the SEC's complaint as true. *See Nishimatsu Construction Co.*, 515 F.2d at 1206 ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on

11

those facts by the judgment, and is barred from contesting on appeal the facts thus established."). As detailed in Section C below, these facts conclusively establish Defendants' liability for violating the federal securities laws.

(2) There is no substantial prejudice to Defendants. Each of the Defendants was properly served with the Complaint and Summons and has had abundant notice of these proceedings.

(3) Grounds for default were clearly established by virtue of Defendants' failures to answer or otherwise respond to the Complaint. Docs. 62 and 88. None of the Defendants is a minor, incompetent, or active service member. Doc. 62, Ex. A ¶ 5.

(4) No evidence exists that Defendants' failure to file an answer or otherwise respond was caused by a good faith mistake or excusable neglect. In each case, the Defendants received service of the Summons and Complaint and had ample time to respond or to seek competent legal counsel. In the case of Defendant Juan Puac, he spoke directly with counsel for the SEC and confirmed receiving the Summons and a copy of the Complaint. *See* Doc. 44, Ex. B ¶ 5 & Ex. C ¶ 3. Regardless, he—like the other Defendants—has elected not to respond to the Complaint.

(5) The entry of a default judgment against a defendant who has taken no action to respond is not considered "harsh." *Joe Hand Promotions*, 2017 WL 373478, at *2.

(6) No evidence exists in the record of any "good cause" to set aside the default if Defendants were to challenge it.

**B.    The Complaint Establishes Defendants' Securities Laws Violations.**

The Complaint's well-pleaded allegations, which are deemed admitted, establish

12

that Defendants violated (1) Sections 5(a) and (c) of the Securities Act; (2) Section 15(a) of the Exchange Act; and, (3) with regards to the Fraud Defendants, Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

### 1.  Defendants violated Sections 5(a) and (c) of the Securities Act.

Sections 5(a) and (c) of the Securities Act prohibit the unregistered offer or sale of securities in interstate commerce unless an exemption from registration applies.  *SEC v. Cont'l Tobacco Co. of S.C.*, 463 F.2d 137, 155 (5th Cir. 1972).  To establish a *prima facie* case of a violation of Sections 5(a) and (c), the Commission need only prove that: (i) a defendant, directly or indirectly, offered or sold securities; (ii) no registration statement was in effect or filed for the offer or sale of those securities; and (iii) interstate transportation or communication, or the mails, were used in connection with the offer or sale.  *See* 15 U.S.C. §§ 77e(a) & 77e(c); *Cont'l Tobacco*, 463 F.2d 137 at 155.  Because Section 5 is a strict liability statute, a defendant's intent is irrelevant.  *Swenson v. Engelstad*, 626 F.2d 421, 424 (5th Cir. 1980).  Once a *prima facie* case is established, the burden shifts to the defendant to prove that the securities offerings fall within an exemption to Section 5.  *Cont'l Tobacco*, 463 F.2d at 156.

### a.  The CryptoFX Venture Agreements are Securities.

Section 2(a)(1) of the Securities Act and Section 3(a)(10) of the Exchange Act define the term security to include an "investment contract."  15 U.S.C. § 77b(a)(l); 15 U.S.C. § 78c(a)(10).  A contract, scheme, or transaction is an investment contract if it meets three requirements: (i) an investment of money; (ii) in a common enterprise; and (iii) on an expectation of profits to be derived solely from the efforts of individuals other

than the investor. *SEC v. WJ. Howey Co.*, 328 U.S. 293, 298-99 (1946); *Williamson v. Tucker*, 645 F.2d 404, 417-418 (5th Cir. 1981). Courts making a determination under *Howey* must disregard "legal formalisms" and instead focus on "the economics of the transaction." *Reves v. Ernst & Young*, 494 U.S. 56, 61 (1990). In the Fifth Circuit, courts apply the "broad vertical commonality test" to determine if a common enterprise exists. *Living Bens. Asset Mgmt., L.L.C. v. Kestrel Aircraft Co*., 916 F.3d 528, 536 (5th Cir. 2019) (quoting *Long v. Shultz Cattle Co.*, 881 F.2d 129, 140-41 (5th Cir. 1989)). Under this test, "the necessary interdependence may be demonstrated by the investors' collective reliance on the promoter's expertise." *Shultz Cattle*, 881 F.2d at 141.

The Venture Agreements that Defendants offered and sold are securities because they are investment contracts. Investors (1) invested money in CryptoFX. Doc. 1, Compl. ¶¶ 38, 40. This was an investment in (2) a "common enterprise" because investors pooled their funds and depended solely on the purported efforts and expertise of Chavez and CryptoFX to obtain returns. *Id.* ¶ 33. Finally, investors had (3) reasonable "expectations of profits solely through the efforts of others" because the investment was passive and investors were assured they would receive a return solely through the efforts of Chavez and CryptoFX. *Id.* ¶¶ 29, 33, 38.

### b. Defendants Offered and Sold Venture Agreements in Unregistered Offerings Using Means of Interstate Transportation and Communication.

As alleged in the Complaint, no registration statement was in effect as to the offer and sale of the Venture Agreements. Doc. 1, Compl. ¶ 42; Ex. F, Stewart Decl. ¶¶ 4-6 [APP. 0068]. Further, each of the Defendants actively offered and sold the Venture

Agreements to investors through in-person meetings and via other means of electronic communication.  Doc. 1, Compl. ¶¶ 37, 40-41.  Defendants also used instruments and means of interstate commerce, including the Internet, cell-phone communications, and roads, among other means, to find and communicate with potential investors and to transport cash to CryptoFX headquarters in Houston.  Doc. 1, Compl. ¶¶ 30, 37, 40, 48, 56.  Thus, Defendants offered and sold securities through interstate commerce in violation of Sections 5(a) and (c) of the Securities Act.  *See SEC v. Teshuater, LLC*, No. 4:20-CV-01187, 2024 WL 1348432, at *5 (S.D. Tex. Mar. 29, 2024) (quoting *SEC v. Straub,* 921 F. Supp. 2d 244, 262 (S.D.N.Y. 2013)  ("[I]t is undisputed that the use of the internet is an 'instrumentality of interstate commerce'")).[4]

### 2.    Defendants Violated Section 15(a) of the Exchange Act.

Section 15(a) of the Exchange Act [15 U.S.C. § 78o] makes it unlawful for any "broker or dealer" to "make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security [. . .] unless such broker or dealer is registered in accordance" with the section. 15 U.S.C. § 78o(a)(1).  Scienter is not an element of Section 15(a).  *SEC v. Offill*, No. 3:07-CV-1643-D, 2012 WL 246061, at *6–7 (N.D. Tex. Jan. 26, 2012).  A broker is "any person engaged in the business of effecting transactions in securities for the account of others."  15 U.S.C. § 78c(a)(4).  To determine whether an individual qualifies as a broker, most courts consider a list of nonexclusive factors: (1) "regular

---

[4] Having established *prima facie* Section 5 violations, the burden of proof shifts to Defendants to establish an exemption from registration.  *Cont'l Tobacco*, 463 F.2d at 156.  They have not and cannot, as none of the exemptions from the registration requirements of Section 5 apply to Defendants' offers and sales.

participation in securities transactions," (2) "employment with the issuer of the securities," (3) "payment by commission as opposed to salary," (4) "history of selling the securities of other issuers," (5) "involvement in advice to investors," and (6) "active recruitment of investors." *SEC v. Moss*, No. 4:20-CV-0972-SDJ, 2022 WL 757226, at *6 (E.D. Tex. March 11, 2022) (citing *SEC v. Collyard*, 861 F.3d 760, 766 (8th Cir. 2017)); *see also SEC v. Hansen*, No. 83 Civ. 3692, 1984 WL 2413, at *10 (S.D.N.Y April 6, 1984) (listing similar factors).

Each of the elements of Section 15(a) is satisfied here. Defendants were not registered with the SEC as brokers or dealers or associated with a registered broker or dealer. Doc. 1, Compl. ¶ 42; Ex. F, Stewart Decl. ¶¶ 7-8 [APP. 0068-69]. They each similarly effected, induced, or attempted to induce the purchase or sale of securities using means of interstate communication and transportation by soliciting investors via the Internet, Zoom meetings, text messages, and telecommunications. Doc. 1, Compl. ¶¶ 30, 37, 40-42, 48, 53, 56. Defendants similarly acted as brokers within the meaning of Section 3(a)(4) of the Exchange Act [15 U.S.C. § 78c(a)(4)] by soliciting investors to purchase the Venture Agreements, advising investors about the merits of the investment, negotiating with investors regarding the amounts to be invested, assisting with paperwork, and receiving commissions (as opposed to salaries) for the sales they made. Doc. 1, Compl. ¶¶ 38-41. Defendants Dulce and Gabriel Ochoa also traveled to North Carolina to solicit at least one investor, and they and other Defendants used Zoom meetings, Whatsapp messages, and text messaging to solicit additional investors in 24/7 Academy. *Id.* ¶¶ 48, 56. Defendants therefore violated Section 15(a) of the Exchange

16

Act. *See SEC v. Mieka Energy Corp.*, 259 F. Supp. 3d 556, 561 (E.D. Tex. 2017) (finding defendants acted as unregistered brokers when they cold-called investors, developed relationships, recommended the investments, sent offering documents, took orders, helped with paperwork, "and, most telling, receiv[ed] transaction-based compensation for their efforts.").

### 3. The Fraud Defendants Violated Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder.

Exchange Act Section 10(b) and Rule 10b-5 thereunder make it unlawful

> by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange

> (a)    To employ any device, scheme, or artifice to defraud,

> (b)    To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

> (c)    To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5; *see also* 15 U.S.C. § 78j(b). Violations of Section 17(a) require a similar showing to violations of Rule 10b-5, except that the fraud must occur in the offer or sale of securities and, with regards to Section 17(a)(2), a defendant must obtain money or property by means of an untrue statement or omission of material fact. 15 U.S.C. § 77q(a); *SEC v. Killion*, No. 16-CV-621, 2017 WL 7052310, at *6 n.61 (S.D. Tex. Mar. 24, 2017); *SEC v. Stanford Int'l Bank, Ltd.*, No. 3:09-CV-0298-N, 2013 WL 12360438,

at *2 (N.D. Tex. Apr. 25, 2013).  Proof of scienter is required for Rules 10b-5 and

Section 17(a)(1), but a showing of negligence is sufficient for Sections 17(a)(2) and (3).

*Aaron v. SEC*, 446 U.S. 680, 691, 697 (1980); *Meadows v. SEC*, 119 F.3d 1219, 1226

n.15 (5th Cir. 1997).

 As alleged in the Complaint, the Fraud Defendants violated Section 17(a) of the

Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 by making multiple

material misrepresentations and omissions to investors and engaging in a fraudulent

scheme to deprive investors of their funds.

 The Ochoas continued to solicit investors even after learning that CryptoFX had

been sued by the SEC and placed into receivership.  *Id.* ¶¶ 46-47.  They never disclosed

the lawsuit or receivership to investors, nor did they reveal that CryptoFX had been

operated as a Ponzi scheme.  *Id.* ¶ 49.  Instead, they represented to investors that their

CryptoFX office would be closed for an "adaptation program" and continued to promise

that Chavez's crypto-asset trading would double investors' money after six months.  *Id.*

¶ 47.  The Ochoas' misrepresentations and omissions were made in connection with the

offer, purchase, and sale of the Venture Agreements, which are securities, and were made

with scienter.  *Id.* ¶¶ 46-49, 56.  They were material, because investors would want to

know whether claims about promised returns or the use of investor funds were true.  *Id.*

¶¶ 46, 49, 55-56; *Basic,* 485 U.S. at 231-32 (citing *TSC Indus., Inc. v. Northway, Inc.*,

426 U.S. 438, 449 (1976)).  The Ochoas' attempts to conceal the fraudulent scheme

similarly amount to participation in the scheme.  Doc. 1, Compl. ¶¶ 55-56; *see SEC v.*

*Holschuh*, 694 F.2d 130, 143–44 n.24 (7th Cir. 1982) ("A scheme to defraud may well

include later efforts to avoid detection of the fraud."). The Ochoas likewise obtained money in the form of commissions through their fraudulent acts. Doc. 1, Compl. ¶¶ 39-40. The Ochoas therefore violated Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5.

Castaneda also engaged in a fraudulent scheme to defraud investors of their funds by using the incoming cash from new investors to pay purported returns to old investors. *Id.* ¶¶ 50, 53-54. In so doing, she knowingly or, at a minimum, with severe recklessness, assisted in operating a fraudulent scheme. *Id.* ¶¶ 3, 28, 50, 54; *SEC v. Helms*, No. 1:13-CV-01036 ML, 2015 WL 5010298, at *13 (W.D. Tex. Aug. 21, 2015) (stating that using investor funds to make Ponzi payments is "by definition, a fraudulent scheme"). She similarly obtained money in the form of commissions through her fraudulent acts. Doc. 1, Compl. ¶¶ 39-40. Castaneda therefore also violated Section 17(a), Section 10(b), and Rule 10b-5.

### 4.   Defendant Gabriel Ochoa violated Exchange Act Rule 21F-17(a).

Exchange Act Rule 21F-17(a) makes it unlawful for any person to "take any action to impede an individual from communicating directly with the SEC staff about a possible securities law violation[.]" 17 C.F.R. § 240.21F-17(a). In May 2023, Defendant Gabriel Ochoa told two CryptoFX investors that he would obtain the promised returns on their investments if the investors withdrew their statements to the SEC staff. *Id.* ¶ 57. In doing so, Ochoa deliberately attempted to impede the investors from communicating with the Commission about securities laws violations, in violation of Rule 21F-17(a).

## C.    The SEC Is Entitled to the Relief Requested in Its Complaint.

"While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." *J&J Sports Prods., Inc. v. Circle R & R, Inc.*, No. 4:18-CV-1359, 2019 WL 937348, at *3 (S.D. Tex. Feb. 11, 2019) (quoting *DIRECTV, Inc. v. Hamilton*, 215 F.R.D. 460, 462 (S.D.N.Y. 2003)).  An evidentiary hearing is not required, and the Court has wide latitude to determine whether such a hearing would be beneficial. *James v. Frame*, 6 F.3d 307, 310-11 (5th Cir. 1993); *see also United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) (proof can be made by "detailed affidavits establishing the necessary facts"); *J&J Sports Prods., Inc.*, 2019 WL 937348, at *3.  As demonstrated below, the SEC is entitled to the relief requested in its Complaint: permanent injunctions; disgorgement with prejudgment interest; and civil penalties.

### 1.    Permanent Injunctions Are Warranted.

Under Section 20(b) of the Securities Act and Section 21(d) of the Exchange Act, the district court shall impose a permanent injunction against a defendant upon a showing that the defendant is engaged or is about to engage in any acts or practices that violate these respective statutes.  15 U.S.C. § 80b-9(d); 15 U.S.C. § 77t(b); 15 U.S.C. § 78u(d). To obtain a permanent injunction against future violation of the securities laws, the Commission must demonstrate the following factors: that (1) the Commission has actually succeeded on the merits, (2) irreparable harm will likely result in the absence of the injunction, (3) the balance of the equities tips in the Commission's favor, and (4) the injunction is in the public interest.  *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7,

32 (2008) (factors pertinent in assessing preliminary or permanent injunctive relief); *see also Starbucks v. McKinney*, 144 S. Ct. 1570, 1576 (2024)  (noting that "[w]hen Congress empowers courts to grant equitable relief, there is a strong presumption that courts will exercise that authority in a manner consistent with traditional principles of equity," which, with regard to injunctive relief, includes using "the traditional four-part test" set forth in *Winter*); *SEC v. Chappell*, 107 F.4th 114 (3d Cir. 2024)  (applying *Starbucks* to a Commission enforcement action).

Each of the four factors supports permanent injunctive relief against Defendants.

### a.   Success on the merits.

Taking the facts alleged in the Complaint as true, the Commission has shown that Defendants violated the securities laws—and thus the Commission has actually succeeded on the merits of its claims—for the reasons set forth above.

### b.   Likelihood of irreparable harm.

The likelihood of irreparable harm is demonstrated by the Commission's having shown (see below) the likelihood of Defendant's future violations.  To obtain an injunction against further securities law violations the Commission must show a "likelihood of recurrence" (*SEC v. Gentile*, 939 F.3d 549, 555-58 (3d Cir. 2019)), and such "cognizable risk of future harm" satisfies the "irreparable harm requirement." *Chappell*, 107 F.4th at 128-29 (discussing *Gentile*).  District courts granting injunctions under the four-part test also have recognized that the government's showing of a likelihood of future violations satisfies the irreparable harm requirement.  *See, e.g.*, *FTC v. Your Yellow Pages, Inc.*, No. 14-CV-22129, 2014 WL 12537140, at *1 (S.D. Fla. July

21

1, 2014) ("There is good cause to believe that immediate and irreparable harm will result from continued violations by [defendant] of the FTC Act [. . .] unless he is restrained and enjoined[.]"); *FTC v. Silueta Distributors, Inc.*, No. 93-CV-4141, 1994 WL 387881, at *1-*2 (N.D. Cal. July 11, 1994) (finding the "substantial risk of irreparable harm to the public from defendants' continuing violations of law").  Even courts that previously concluded irreparable harm is unnecessary in government enforcement actions have alternatively held that demonstrating a likelihood of future violations is sufficient to satisfy the irreparable harm requirement.  *See, e.g.*, *SEC v. Lake Havasu Ests.*, 340 F. Supp. 1318, 1324 (D. Minn. 1972); *United States v. Kahen*, No. 20-CV-00474, 2020 WL 1697974, at *1 (E.D.N.Y. Jan. 28, 2020).

In determining whether there is a reasonable likelihood of future violations, courts consider the following factors:

(1)    the egregiousness of the defendant's conduct;
(2)    the isolated or recurrent nature of the violation;
(3)    the degree of scienter;
(4)    the sincerity of defendant's recognition of his transgression; and
(5)    the likelihood of the defendant's job providing opportunities for future violations.

*SEC v. Zale Corp.*, 650 F.2d 718, 720 (5th Cir. 1981); *SEC v. Gann*, 565 F.3d 932, 940 (5th Cir. 2009); *SEC v. Blatt*, 583 F.2d 1325, 1334 n.29 (5th Cir. 1978).  The existence of past violations of the federal securities laws may give rise to an inference that there will be future violations and the fact that a defendant is currently complying with the securities laws does not preclude an injunction.  *Blatt*, 583 F.2d at 1335; *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980).

Under the facts of this case, each of the considerations and factors stated above shows that Defendants are likely to violate the registration and, with regard to the Fraud Defendants, the anti-fraud provisions of the securities laws in the future.

First, Defendants' acts were egregious and recurrent.  Each of the Defendants repeatedly solicited investors, promising returns between 15% and 100% through CryptoFX's foreign-exchange and crypto-asset trading.  Doc. 1, ¶¶ 37, 40-41.  Defendants held seminars or calls on which they described CryptoFX as a road to financial freedom and touted their own purported success through investing in CryptoFX.  *Id.*  As Leaders, Defendants also took various actions that perpetuated the Ponzi scheme, including collecting money, holding seminars, advising investors, and paying investor returns.  *Id.* ¶¶ 3, 36, 50, 53.  Meanwhile, each of the Defendants pocketed commissions through their sales.  *Id.* ¶¶ 39-40.

Second, with regards to the Fraud Defendants, their acts manifested a high degree of scienter.  The Ochoas solicited investors despite knowing the Commission had sued CryptoFX and that the company had been placed in receivership.  Doc. 1, ¶¶ 46-49.  The Ochoas similarly tried to cover up that CryptoFX was in receivership by claiming that their office was undergoing an "adaptation program" and promising investors that their returns would be paid in full in November 2022, then pushing that date back to December 2022.  *Id.* ¶¶ 47, 55.  The Ochoas similarly tried to induce investors to invest in another scheme called "24/7 Academy," falsely promising that an investment in 24/7 Academy would secure the investors' CryptoFX investments.  *Id.* ¶ 56.  Gabriel Ochoa later attempted to impede investors' communications with SEC staff by promising the

investors that he would obtain their returns if they retracted their statements to authorities. *Id.* ¶ 57.

Castaneda similarly handled incoming and outgoing cash for CryptoFX and then used that money to pay purported returns to existing investors or commissions to salespeople. *Id.* ¶¶ 50, 53.  She also tried to conceal CryptoFX's fraud by lying about investment return payment dates, telling investors their returns would be paid in full in November 2022, then pushing the date back to December 2022. *Id.* ¶ 55.  Castaneda therefore knew, or was severely reckless in not knowing, that the money she received from investors was not being used to invest in forex or crypto-asset markets, but was instead being used to perpetuate a Ponzi scheme.  Doc. 1, Compl. ¶ 54.  Based on these facts, the Fraud Defendants acted with a significant degree of scienter in defrauding investors.

Third, because none of the Defendants has responded to the Commission's litigation, they have not taken responsibility for their transgressions. *SEC v. Millennium Bank*, No. 7:09-CV-00050-O, 2011 WL 13233635, at *5 (N.D. Tex. Mar. 15, 2011) (noting a defendant had not shown "any recognition of his transgressions as he has filed no answer or motion, or otherwise attempted to defend this suit").

Finally, Defendants still have access to the means and procedures by which they committed their violations, giving them substantial opportunities for future violations. Specifically, Defendants used widely available means like cell phones and the Internet to carry out their violations.  Doc. 1, ¶¶ 30, 37, 40.  Furthermore, the Fraud Defendants used these means, including Zoom meetings and chats, to conceal the CryptoFX fraud after the

24

SEC filed suit against CryptoFX and to solicit investors to another related scheme called 24/7 Academy.  *Id.* ¶¶ 55-56.  Defendants have and likely will find additional opportunities to commit future violations of the securities laws and therefore permanent injunctions are appropriate.

### c.     Balance of Equities and Public Interest

The remaining two *Winter* factors (balancing the equities and consideration of the public interest) are easily met here. The third factor, balancing the equities, favors the Commission because "investors need[ ] the protection of an injunction" notwithstanding the private interests of the defendant, especially in light of the likelihood of their future fraud violations.  *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1102 (2d Cir. 1972), *abrogated on other grounds,* S*EC v. Ahmed,* 72 F.4th 379, 406-07 (2d Cir. 2023). Defendants' repeated violations of the federal securities laws, as well as their failure to appear in this lawsuit and acknowledge those violations, weigh heavily in favor of injunctive relief to protect investors.  By contrast, Defendants will face minimal burdens in being required to comply with injunctive relief that restrains them from violating the federal securities laws.

Finally, as to the fourth factor for an injunction, "[a]s a practical matter, if a plaintiff demonstrates both actual success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff."  *Chappell*, 107 F.4th at 139 (quotation omitted).  The public interest in enforcing Congress's registration and antifraud provisions favors enjoining Defendants here.

The four *Winter* factors having been met, Defendants should be enjoined from violating Sections 5(a) and 5(c) of the Securities Act and Section 15(a) of the Exchange Act. Fraud Defendants Gabriel Ochoa, Dulce Ochoa, and Castaneda should also be permanently enjoined from violating Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. Gabriel Ochoa should also be permanently enjoined from violating Rule 21F-17(a) of the Exchange Act [17 C.F.R. § 240.21F-17(a)].

The facts above also support a more specific, permanent injunction enjoining Fraud Defendants Gabriel Ochoa, Dulce Ochoa, and Castaneda from directly or indirectly, including, but not limited to, through any entity owned or controlled by him or her, participating in the issuance, purchase, offer, or sale of any securities; provided however that such injunction shall not prevent him or her from purchasing or selling securities for his or her own personal account. *See* Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)]; *SEC v. Voight*, No. CV H-15-2218, 2021 WL 5181062, at *14 (S.D. Tex. June 28, 2021) (noting that such an injunction is "specifically authorized: in 15 U.S.C. §§ 77t(b) and 78u(d)(1)" of the Securities and Exchange Acts); *see also SEC v. Faulkner*, No. 3:16-CV-1735-D, 2021 WL 75551, at *14-16 (N.D. Tex Jan. 8, 2021) (ordering conduct-based injunction similar to one requested here); *SEC v. Sneed*, No. 3:20-CV-2988-S-BH, 2021 WL 4202171, at *9–10 (N.D. Tex. Sept. 10, 2021) (same); *SEC v. AmeraTex Energy, Inc.*, No. 4:18-CV-00129, 2021 WL 1061395, at *5 (E.D. Tex. Mar 18, 2021) (same).

### 2.    Disgorgement is Warranted.

Based upon the allegations that are deemed true, the Court should order disgorgement of all of Defendants' ill-gotten gains and set the disgorgement amounts. This Court may order disgorgement of a defendant's ill-gotten gains causally connected to the defendant's securities law violations.  *See* 15 U.S.C. 78u(d)(3), (d)(5), (d)(7); *Liu v. SEC*, 591 U.S. 71 (2020); *SEC v. Hallam*, 42 F.4th 316, 341 (5th Cir. 2022).

The Court has broad discretion in determining the amount of disgorgement.  *See, e.g.*, *Helms*, 2015 WL 5010298, *19 (citing *SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 73 (5th Cir. 1993)).  "[T]he SEC has the burden reasonably to approximate the defendant's 'unjust enrichment' attributable to the securities violation."  *SEC v. Hallam*, 42 F.4th 316, 341 (5th Cir. 2022); *see also SEC v. Wilson*, No. 4:22-CV-00741-O, 2022 WL 18275941, at *7–8 (N.D. Tex. Dec. 28, 2022), *report and recommendation adopted*, No. 4:22-CV-00741-O, 2023 WL 172042 (N.D. Tex. Jan. 12, 2023).  The Court must therefore order disgorgement "that does not exceed a wrongdoer's net profits" and excludes "legitimate expenses."  *Hallam*, 42 F.4th at 342; *Liu*, 140 S. Ct. at 1940.  Any risk of uncertainty in calculating disgorgement falls on the wrongdoer whose illegal conduct created the uncertainty.  *SEC v. Patel*, 61 F.3d 137, 140 (2d Cir. 1995); *Voight*, 2021 WL 5181062, at *7 (S.D. Tex. June 28, 2021) (quoting *SEC v. First City Fin'l Corp.*, 890 F.2d 1215, 1232 (D.C. Cir. 1989)).

Based on CryptoFX's internal accounting records, Defendants received the amounts listed below during the Relevant Period.

| Defendant | Disgorgement Amount |
|---|---|
| Gabriel Arguelles | $55,843.00 |
| Hector Aquino | $55,169.00 |
| Gloria Castaneda | $548,865.90 |
| Carmen de la Cruz | $45,073.00 |
| Dulce Ochoa | $16,560.00 |
| Gabriel Ochoa | $473,401.52 |
| Juan Puac | $164,846.00 |
| Claudia Velazquez | $53,585.00 |

Ex. A, Warren Decl. ¶¶ 7-30 [APP. 0004-7]. These amounts represent reasonable approximations of Defendants' ill-gotten net profits. *Id.* Specifically, they approximate the proceeds Defendants received from offering and selling CryptoFX Venture Agreements. *Id.* Because CryptoFX operated primarily as a cash business, there are very few bank records that track incoming investments or payments to Leaders. *Id.* ¶¶ 3-5 (identifying documents reviewed); Ex. B, Munoz Depo. 166:15-19 [APP. 0024]. Instead, CryptoFX employed an internal accounting software called Salesforce to track payments to Leaders. Ex. B, Munoz Depo. 156:5-12, 157:22-159:18 [APP. 0018-0021]. An employee from CryptoFX's accounting department has testified in these proceedings that CryptoFX entered all payments made to investors, including commissions and returns paid to Leaders, in Salesforce. *Id.* at 178:2-16 [APP. 0025]. She similarly testified that the accounting office endeavored to ensure that these records were accurate and that she believes the records were correct. *Id.* at 161:24-162:19 [APP. 0022-23]. The defendants who have appeared in this matter have confirmed their own belief that they and CryptoFX's accounting department endeavored to keep accurate records of payments. Ex. E, Zavala Depo. 93:6-94:4 [APP. 0063-64]; Ex. D, Sanchez Depo. 101:9-102:1, 113:3-24 [APP.

0048-49]; Ex. C, Saravia 3/12/2025 Depo. 93:9-94:2 [APP. 0036-37]. There is also no evidence to suggest that any of these proceeds paid out to Defendants were used for legitimate business expenses or returned to investors. Ex. A, Warren Decl. ¶¶ 7-30 [APP. 0004-7]. The foregoing amounts are therefore reasonable approximations of Defendants' ill-gotten net profits attributable to the securities laws violations alleged in the Complaint.

Furthermore, the SEC intends to distribute any amounts collected to victims to the extent feasible and will apply to the Court for approval of any future distribution. *See SEC v. Blackburn*, 15 F.4th 676, 682 (5th Cir. 2021) (finding *Liu*'s "awarded for victims" language satisfied by the SEC's representation that "money the defendants return will go to the harmed investors") (internal quotation marks omitted).

### 3. Prejudgment Interest is Warranted.

Courts may add prejudgment interest to a disgorgement amount to prevent defendants from benefitting from the use of ill-gotten gains interest-free. *SEC v. Gunn*, No. 3:08-CV-1013, 2010 WL 3359465, at *2 (N.D. Tex. Aug. 25, 2010). Prejudgment interest is a matter left to the district court's discretion. *SEC v. United Energy Partners, Inc.*, 88 F. App'x 744, 747 (5th Cir. 2004) (per curiam), *cert. denied sub nom., Quinn v. SEC*, 543 U.S. 1034 (2004). The IRS underpayment of federal income tax rate is often used for calculating prejudgment interest on disgorgement in SEC enforcement actions. *See, e.g., Helms*, 2015 WL 5010298, at *19.

Based on the principal disgorgement amounts cited above, application of the tax underpayment rate from September 19, 2022 (the date the SEC filed its action against CryptoFX halting the CryptoFX offering, which presumptively halted Defendants'

solicitations of investors)[5] and February 29, 2024 (the last day of the month prior to the

SEC filing the instant lawsuit) results in prejudgment interest in the following amounts:

| Defendant | Disgorgement Amount | Prejudgment Interest | Total |
|---|---|---|---|
| Gabriel Arguelles | $55,843.00 | $5,481.27 | $61,324.27 |
| Hector Aquino | $55,169.00 | $5,415.10 | $60,584.10 |
| Gloria Castaneda | $548,865.90 | $53,873.92 | $602,739.82 |
| Carmen de la Cruz | $45,073.00 | $4,424.14 | $49,497.14 |
| Dulce Ochoa | $16,560.00 | $1,534.15 | $18,094.15 |
| Gabriel Ochoa | $473,401.52 | $43,856.99 | $517,258.51 |
| Juan Puac | $164,846.00 | $16,180.45 | $181,026.45 |
| Claudia Velazquez | $53,585.00 | $5,259.64 | $58,844.64 |

Ex. A, Warren Decl. at ¶ 31 [APP. 0007-8].

### 4.    The Court Should Order Defendants to Pay Civil Penalties.

Defendants violated multiple provisions of the Securities Act and the Exchange

Act and are therefore liable for penalties under Sections 20(d) and 21(d)(3) of those acts,

respectively.  15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d)(3).[6]  A first-tier penalty is imposed

for any violation of the Securities Act or the Exchange Act.  15 U.S.C. § 77t(d)(2)(A); 15

U.S.C. § 78u(d)(3)(B)(i).  A second-tier penalty is warranted if the defendant's violation

"involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory

requirement."  15 U.S.C. § 77t(d)(2)(B); 15 U.S.C. § 78u(d)(3)(B)(ii).  The Court may

impose a third-tier penalty where a defendant's violation "involved fraud, deceit,

manipulation, or deliberate or reckless disregard of a regulatory requirement" and the

---

[5] A different date range was used for Dulce and Gabrial Ochoa, who continued to solicit after the SEC filed its action against CryptoFX.  Their prejudgment interest is calculated from October 11, 2022 (the approximate date of their last known solicitation) to February 29, 2024.

[6] Civil penalties are designed to punish the violator and to deter future violations.  *See SEC v. Life Partners Holdings, Inc.*, 71 F. Supp. 3d 615, 623 (W.D. Tex. Dec. 2, 2014), *aff'd in part, rev'd in part on other grounds*, 854 F.3d 765, 782-83 (5th Cir. 2017); *Offill,* 2012 WL 1138622, at *3.

violation "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii).

Under both the Securities Act and the Exchange Act, the maximum penalty that can be awarded for *each violation* is the greater of the amount set by statute for each tier or the gross amount of pecuniary gain to the defendant as a result of the violation. 15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d)(3)(B). The amounts set by statute for a natural person are $11,823 for a first-tier penalty, $118,225 for a second-tier penalty, and $236,451 for a third-tier penalty. 15 U.S.C. § 77t(d)(2); 15 U.S.C. § 78u(d)(3)(B); s*ee also* 17 C.F.R. 201.1001.[7] Ultimately, the amount of any civil penalty "shall be determined by the court in light of the facts and circumstances." 15 U.S.C. §§ 77t(d), 78u(d)(3).

The following factors are relevant in determining whether a civil penalty is appropriate and, if so, in what amount: (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition. *SEC v. Fox*, No. 4:17-CV-271, 2018 WL 1210858, at *2 (E.D. Tex. March 8, 2018); *SEC v. Offill*, No. 3:07-CV-1643-D, 2012 WL 1138622, at *3 (N.D. Tex. Apr. 5, 2012).[8]

---

[7] The penalty amounts are periodically adjusted for inflation. The Complaint's allegations focus on violations that occurred after November 3, 2015. *See* https://www.sec.gov/enforce/civil-penalties-inflation-adjustments.htm.

[8] Courts have also considered such additional factors as a defendant's cooperation with law enforcement authorities, and whether a defendant has admitted wrongdoing. *Life Partners Holdings, Inc.*, 71 F. Supp. 3d at 623; *Offill*, 2012

Defendants Gabriel Arguelles, Hector Aquino, Carmen de la Cruz, Juan Puac, and Claudia Velazquez should be subject to first-tier penalties equal to their gross pecuniary gains. As demonstrated above, these Defendants engaged in multiple violations of the Securities Act and the Exchange Act by offering and selling securities in unregistered offerings to investors across the country. These Defendants earned substantial commissions from unwitting investors and, regardless of these Defendants' mental states, those investors have suffered significant losses. These Defendants' conduct was recurrent and there is nothing in the record to suggest that these Defendants' current or future financial conditions will render them unable to pay. These Defendants should therefore be ordered to pay civil penalties in amounts equal to their gross pecuniary gains, which here match their respective disgorgement amounts set forth above (*see supra* at Section D.1.d) and represent the proceeds each of these Defendants received as a result of their wrongful conduct. Ex. A, Warren Decl. ¶¶ 7-20 [APP. 0004-7]; *see Offill*, 2012 WL 1138622, at *3 (ordering "first-tier awards of $120,000 per offering penalty"); *SEC v. Jankovic*, No. 15 CIV. 1248 (KPF), 2018 WL 301160, at *7 (S.D.N.Y. Jan. 4, 2018) (ordering "a first-tier penalty in the amount of $57,000, equivalent to the total proceeds that Jankovic personally obtained within the limitations period"); *SEC v. Reynolds*, No. 3:08-CV-0438-B, 2013 WL 3479825, at *3 (N.D. Tex. July 11, 2013) (ordering first-tier penalties equal to $650,000).

---

WL 1138622, at *3; *SEC v. Razmilovic*, 822 F. Supp. 2d 234, 280 (E.D.N.Y. 2011), *vacated in part on other grounds*, 738 F.3d 14 (2d Cir. 2013).

Fraud Defendants Gloria Castaneda, Dulce Ochoa, and Gabriel Ochoa should be subject to third-tier penalties because their violations involved "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and led to "substantial losses" for investors. 15 U.S.C. §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii).  As with the other Defendants, the Fraud Defendants earned substantial commissions by selling securities in unregistered offerings to multiple investors who have suffered significant losses.  However, their behavior was more egregious.

The Ochoas continued to solicit investors, even after they learned that CryptoFX had been sued by the SEC and was in receivership.  Doc. 1, ¶¶ 46-49.  They did not stop at soliciting investors, but attempted to cover up that CryptoFX was a fraud by claiming their office was undergoing an "adaptation program" and promising payback dates to investors that did not come to pass.  *Id.* ¶¶ 47, 55.  They then switched tactics and solicited investors for another scheme called "24/7 Academy."  *Id.* ¶ 56.  Gabriel Ochoa later attempted to impede investors' communications with SEC staff by promising the investors that he would obtain their returns if they retracted their statements to authorities.  *Id.* ¶ 57.  The Ochoas' actions were therefore recurrent and performed with a high degree of scienter, culminating in the loss of substantial investor funds.  There is similarly nothing in the record to suggest that the Ochoas' financial conditions merit any reduction of the penalty amounts.

Castaneda's behavior was egregious because she personally handled millions of dollars in incoming and outgoing cash for CryptoFX, using new investments funds to pay purported returns to existing investors or commissions to salespeople.  *Id.* ¶¶ 50, 53.  She

also tried to conceal CryptoFX's fraud by lying about investment return payment dates. *Id.* ¶ 55.  These acts show that Castaneda acted with a high degree of scienter on a recurrent basis.  There is similarly nothing in the record to justify reducing the amount of the penalty sought against Castaneda.

Based on a balancing of the five factors above, the SEC respectfully requests that the Court order Gabriel Ochoa and Castaneda to pay civil penalties equal to their gross pecuniary gain, which, like the other Defendants, match their respective disgorgement amounts.  Ex. A, Warren Decl. at ¶¶ 7-15 [APP. 0004-5].  The SEC respectfully requests that the Court order Dulce Ochoa to pay a one-time maximum third-tier penalty ($230,464).  The SEC seeks this amount because the Ochoas' proceeds were mostly credited to her husband and a penalty equal to Dulce Ochoa's gross pecuniary gain ($16,560.00) would not accurately reflect her active participation in the fraud and high level of culpability.  *See supra* Statement of Facts, at II.D; *SEC v. Crumbley*, No. 3:16-CV-0172-L, 2022 WL 1505868, at *4 (N.D. Tex. May 11, 2022) (ordering single third-tier penalty equal to statutory maximum). The requested penalties, which along with the other requested monetary relief are set forth in the summary chart at Page 2, are warranted by Defendants' misconduct and will serve to uphold the aims of the federal securities laws by punishing Defendants and deterring future harm to investors.

## CONCLUSION

For the foregoing reasons, the SEC respectfully requests that the Court grant this motion and enter the attached Final Judgments by Default against Defendants, and for such further relief to which the Commission has shown itself entitled.

Dated: January 15, 2026

Respectfully submitted,

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION

/s/ Tyson M. Lies
Matthew J. Gulde
Illinois Bar No. 6272325
S.D. Texas Bar No. 1821299
Tyson M. Lies
Texas Bar No. 24087927
S.D. Texas Bar No. 3865116
Jillian Harris
Texas Bar No. 24087671
S.D. Texas Bar No. 2669497
United States Securities and
Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, TX  76102
Telephone:  (817) 978-1410
Facsimile:  (817) 978-4927
guldem@sec.gov
liest@sec.gov
harrisji@sec.gov

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I affirm that on January 15, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court for the Southern District of Texas, Houston Division, by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.  I further certify that, on the same day, I caused a copy of the foregoing to be served by U.S. Mail to Defendants at their last known addresses.

/s/ Tyson M. Lies
Tyson M. Lies